Thompson *v.* Richards.

# Charles B. Thompson and another v. Daniel Richards.

*Evidence. Deed, when directly in issue, how proved.* A witness was allowed, after objection, to testify that he executed and delivered to the defendants a deed of certain company lands, which they accepted. *Held,* that, as the object of the plaintiff was to show performance of the condition, requiring such conveyance, upon which the promise of the defendants was based, the deed was directly in issue, and should have been produced and proved in the ordinary way.

It was for the Court, and not the witness, to judge whether the instrument he called a deed was a conveyance in legal effect.

*Acceptance of instrument, when conclusive upon the party.* The mere fact that the defendants, who were entitled by the condition of a contract to a legal conveyance of lands, accepted the paper purporting to be a deed, would not constitute performance of such condition by the plaintiff. They would not be concluded from objecting to its sufficiency.

*Cross-examination.* A witness had stated in his direct examination that he had delivered to the defendants all of certain promissory notes, which he had agreed to deliver by the condition of his contract, the performance of which condition his testimony was intended to prove. The defendants proposed, by cross-examination, to show that he was mistaken in his statement on the direct examination, and also that he had in fact used sixty-nine of the notes, and that at the time of the agreement he had a large amount of notes and other property covered by the agreement, which he fraudulently secreted and refused to deliver; which cross-examination the Court below refused to allow. *Held,* that this was a proper cross-examination: it related directly to the statement made in the direct examination.

Had this been a proper case for recoupment, still the rejection of the proposed cross-examination would have been clearly erroneous, under the most restricted rule ever adopted, where cross-examination is allowed at all; inasmuch as it related directly to the same subject matter, and to the identical facts stated in the direct examination.

The defendants had a right, upon any theory of the defense, on cross-examination, not only to show that a part of the property had not been delivered, but that there had been an entire failure to deliver any part of it. And they had a right to draw out any thing which would tend to contradict, weaken or modify the evidence given by the witness on his direct examination, and to test his credibility.

*Recoupment, when appropriate.* This was not a case for recoupment. The plaintiff declared upon a special contract, and not upon an implied contract, to pay for the property, which was delivered to and appropriated by the defendants. He was bound to show performance, on his part, of the condition in the contract on which the promise of the defendants was based, or he could not recover at all.—*Allen v. McKibbin,* 5 *Mich.* 449.

*Evidence in defense.* The defendants had a right, not only to show such non-performance by cross-examination, but to introduce evidence for the same purpose in defense. Evidence of this kind was offered by the defense, but excluded by the Court. *Held,* that this was clearly erroneous.

*Judgment, when final. Contract of indemnity.* A judgment against the plaintiff and one of the defendants, to which the other defendant was not a party, on indebtedness of the firm, was introduced on the part of the plaintiff, allowed in evidence, and held by the Court to be the measure of damages. *Held* to be error. Had the contract been one of indemnity, merely, and had the judgment been against the

THOMPSON *v.* RICHARDS.

plaintiff and both defendants, it might have constituted the measure of damages; but the contract was to *pay* the debts of the firm, and not merely to indemnify against them.—*Hall v. Nash*, 10 *Mich.* 303; *Butler v. Ladue*, 12 *Id.* 173.

*Contract, interpretation of.* It is the duty of the Court to construe a written contract, and to charge the jury upon any question that may arise upon it. In this case there was an agreement to "sign off" by the plaintiff all the right, title, property, profits and lands of the company. *Held*, that this agreement, fairly interpreted with reference to the circumstances and the nature of the property, would, as to all tangible personal property, and negotiable paper, payable to bearer, be satisfied by delivery, unless written evidence of the transfer was specially requested; that as to accounts and other choses in action the contracting party should have conveyed his interest by a written assignment and delivery; and that the interest of the party in the lands of the firm could only be transferred by a deed of conveyance, duly executed, acknowledged and delivered.

A transfer of a part of the property only would not satisfy such a condition, unless the defendants had waived a full performance, and such waiver must be the act of both defendants.

*Admissions of one defendant, effect of as against the other.* The admissions of one o two defendants sued for a joint liability, are evidence against himself; but, if admissions of a like tendency by the other defendant are not proved, such admissions already introduced, should be withdrawn from the jury.

*Heard April 5th. Decided April 17th.*

Error to Livingston Circuit.

This was an action of trespass on the case, based upon a special agreement.

Upon the trial of the issue in the Court below, the counsel for the plaintiff gave in evidence the agreement sued on; such agreement being the whole claim of the plaintiff, and which was in the words and figures following, to wit:

"Pinckney, Dec. 1st, 1862.

"We the undersigned do agree to pay all the indebtedness of the firm of Thompson & Richards, when D. Richards signs off all his rights and title in all property and all profits that have been made in said business, lands, &c., and for the same we have paid him twelve hundred dollars in notes of the said business in full.

"C. B. THOMPSON.

"WM. E. THOMPSON."

Thereupon the plaintiff Richards was sworn as a witness, and testified in part as follows: "I am the plaintiff; I lived in Pinckney previous to, and on the 1st December, 1862, and up to that date was a partner with the defendant, Wm. E.

Thompson, in a manufacturing business, making fanning mills, washing machines, wheelbarrows, well curbs, and other wooden ware. On the 1st day of December, 1862, we, as a firm, were indebted to other persons. The firm name was Richards & Thompson. On that day the above agreement was executed, and I went out of the concern, and delivered over to them all the property of the firm. I also executed to them a deed of the real estate the firm owned in Pinckney. The firm also owned lands in Iowa and Indiana." The plaintiff, by his counsel, here offered to show that he executed and delivered to the defendants a deed of the lands in Iowa and Indiana, which they accepted.

Objected to by the defendants' counsel. Objection overruled, and exception taken.

Witness testified: "I executed and delivered to the defendants a deed of the Company's lands in Iowa and Indiana, which they accepted." To the receiving of which testimony the defendants' counsel objected, because it was incompetent for the plaintiff to show the performance of the condition precedent in his agreement in that manner. The Court received the testimony, and the defendants' counsel excepted.

The witness further testified, "that the deeds aforesaid were all the papers in writing that he signed or executed, in the performance of the condition to be performed on his part, in the agreement sued on in this cause, but that such condition was further performed by the actual delivery of the property of the late firm to the defendants."

Witness further testified, "that on the day of the acknowledgment of the execution of the aforesaid deed of the Pinkney land, and the delivery to defendant of the property of the late firm, he asked the defendant, Charles B. Thompson, for a writing to show that he had fulfilled on his part; that said Thompson told him it was of no use, there was nothing more for him (witness) to do."

Mrs. Ellen Richards testified for the plaintiff as follows: "I am wife of the plaintiff; was present when the deed was

signed, and plaintiff asked if he ought not to have some paper to show that he had fulfilled on his part. Defendant Charles B. Thompson said, 'No, you have done all you agreed to do,' there was nothing more for him to do, or to sign."

This was all the evidence given, showing any acceptance or satisfaction on the part of the defendants, with the performance of the condition precedent, in the agreement of the 1st of December, 1862.

The said plaintiff testified on cross-examination, "that the personal property delivered up to the defendants was in value over five thousand dollars, and consisted in fanning mills, washing machines, wheelbarrows, sieving, lumber, tools, peddler's rack, books of account and notes—promissory notes due to the firm of Richards & Thompson, amounting to five thousand dollars."

After some further testimony from the witness as to the custody of the books, papers and notes of the late firm, for a few weeks previous to the 1st day of December, 1862, on objection by plaintiff's counsel, the Court intimated a doubt as to the relevancy of the examination, under the pleadings, whereupon the defendants, by their counsel, proposed to show,

*First.* By the further cross-examination of this witness, that he, witness, was mistaken when he said that he delivered all the promissory notes belonging to the late firm of Thompson & Richards to the defendants, that in fact he kept and used sixty-nine of them.

*Second.* Under the pleadings, that the plaintiff, at the time of the agreement of first of December, 1862, had in his actual possession a large amount of the notes of the firm, and other property, which he had fraudulently secreted and refused to deliver, and which notes and property were embraced in and covered by the agreement sued upon in this case.

*Third.* They insisted that they had a right on the cross-examination and by other testimony, to show the same state of facts.

To which proposals and claim to further examine this witness and to introduce other testimony showing such facts, the plaintiff's counsel objected. The Court sustained such objections for the reason that such evidence was not competent under the defendants' plea of the general issue alone. Defendants' counsel excepted.

The plaintiff's counsel then gave in evidence the records, files and journal entries of the Circuit Court for the county of Livingston, in the case of one Samuel Grimes v. Daniel Richards, the plaintiff in this case, and Wm. E. Thompson, one of defendants, jointly impleaded as copartners, in which judgment was rendered by the said Circuit Court on the third day of August, 1864, for the sum of $760.20 in favor of the said Samuel Grimes, and against the defendants, Daniel Richards and Wm. E. Thompson, by default, for want of appearance and plea.

Defendants' counsel, on behalf of the said C. B. Thompson, objected; objection was overruled by the Court, and the judgment received as against both of the defendants. Exceptions were taken.

The plaintiff then further gave in evidence the notes and other matters by which such judgment was made up, consisting of three notes of the late firm of Richards & Thompson, given to one Eri Coleman, and by him transferred to said Samuel Grimes, and also an open book account of the said Grimes against said Richards & Thompson, from which it appeared that the judgment taken by said Grimes did not allow items of credit to the amount of $57.00, and that if said judgment had been defended such judgment of $767.20 would have been reduced by the amount of the said fifty-seven dollars. It was further given in evidence that said Grimes, previous to the bringing of suit had ·demanded of the defendant Charles B. Thompson the payment of the three notes and the open account, and that said Thompson had declined to pay such indebtedness, alleging as an excuse that he had not received certain promissory notes, the

property of the firm of Richards & Thompson, covered by the agreement of the first of December, 1862, which were yet in the possession of the plaintiff in this case.

Samuel Grimes testified for plaintiff as follows: "I know the parties. I presented the account sued on to Wm. E. Thompson for payment, and he told me to wait till Charles B. came up, and they would fix it. I afterwards presented it to Charles B. at Ann Arbor, and he said they were to pay it."

And thereupon defendants' counsel called the defendant Wm. E. Thompson, who testified as a witness for the defendants, and the following questions were proposed by the defendants' counsel to such witness:

*First.* At the time the agreement of the 1st of December, 1862, was executed, was there any statement made by the plaintiff that he had then delivered all the notes of the then firm of Richards & Thompson to the defendants, and if you shall answer "yes" to such question, was such statement the consideration or inducement that caused the defendants to execute and deliver the agreement sued on in this case?

*Second.* Was there any property or notes in the actual possession of the plaintiff, covered by the agreement sued on in this case, not delivered to defendants, or either of them, and which plaintiff expressly refused to deliver?

*Third.* Do you, or do you not know, of any assets of the late firm of Richards & Thompson, covered by the agreement sued on in this case, which the plaintiff has converted to his own use, to a large amount, both before and after the agreement of the 1st of December, 1862?

The defendants also offered to show, by this witness, under the pleadings, that the plaintiff at the time of the agreement sued upon had in his actual possession a large amount of the notes and assets of the late firm of Richards & Thompson, and other property, which he fraudulently secreted, and refused to deliver, which notes and property were embraced in, and covered by the agreement sued on in this case.

To which first, second and third questions and proposals

14 MICH.—U.

the plaintiff's counsel objected, on the ground that the same were incompetent under the pleadings. Which objection was sustained by the Court, and the questions and proposed evidence excluded, and exceptions taken.

The Circuit Judge charged the jury, upon the question of damages, "that if they found for the plaintiff, they should find the amount of the judgment of said Samuel Grimes, with interest from the 3d day of August, 1864, that being the day on which said judgment was rendered."

That before they could find for the plaintiff they must find "that he signed off according to his agreement, or that the defendants were satisfied with what the plaintiff had done in that behalf;" and on being requested to define to the jury, by the counsel of defendants, how that signing off must be made, or done, and to separate that portion of the charge, "that he signed off according to his agreement," from this, "or that the defendants were satisfied with what plaintiff had done," the said Circuit Judge declined to modify, or define, as requested. To which refusal the defendants excepted.

The defendants' counsel also excepted to the rule of damages given by the said Circuit Judge to the jury, in his charge. The defendants' counsel further prayed the Circuit Judge to charge the jury, on the behalf of the defendants, as follows:

*First.* The "signing off" required by the agreement of the 1st of December, 1862, must be in writing, unless the evidence proves the defendants, and both of them, to have accepted a parol transfer.

*Second.* There is no evidence in the case that Wm. E. Thompson, one of the defendants, ever accepted or expressed himself satisfied with a parol delivery of the assets covered by the agreement of the 1st of December, 1862.

*Third.* The "signing off," whether in writing or by parol, implied a delivery of such notes and property as were on the said 1st December, 1862, in the actual custody and possession of the plaintiff.

*Fourth.* If the "signing off" required by the agreement of

THOMPSON *v.* RICHARDS.

the 1st December, 1862, can be performed by parol, then it must be attended by an actual delivery of all the assets of Richards & Thompson, covered by the agreement aforesaid, unless the defendants were satisfied by a delivery of a part of such assets.

*Fifth.* As matter of law, from the evidence, there has been in this case no performance of the condition precedent, in the agreement of the 1st December, 1862, on the part of the plaintiff.

*Sixth.* Before the plaintiff can recover other than nominal damages on this agreement, he must show actual damage ; that he has paid the judgment of Samuel Grimes, or otherwise satisfied it.

*Seventh.* The agreement sued on in this case is, in effect, nothing but an indemnity to the plaintiff against the debts due by the late firm of Richards & Thompson.

*Eighth.* The plaintiff has no right of action on this agreement, unless he shows himself damnified.

*Ninth.* If the jury find a verdict for the plaintiff, it must be against both of the defendants or neither, and the admission of satisfaction with the mode of transfer by parol, of the defendant Charles B. Thompson, would not preclude the defendant, Wm. E. Thompson, from demanding of the plaintiff a written " signing off" under the agreement of the 1st of December, 1862.

Which nine several charges the circuit judge refused to give to the jury, and to which refusal the defendants' counsel excepted.

The jury found for the plaintiff $841 damages, for which sum judgment was rendered, and the cause was brought to this Court by writ of error and bill of exceptions.

*Norris & Ninde,* for plaintiffs in error.

If for any of the errors assigned, the judgment in this cause should be reversed, and the cause remitted for a new trial, then all the questions raised in the errors assigned,

would again come before the Court below for its ruling. In this view it is proper for the Court ·to indicate its opinion upon them all.

1. By the agreement of the 1st December, 1862, the defendant in error was, (as a condition precedent,) to "sign off" his interest in "lands." This could only be done by an instrument in writing, properly signed, sealed and acknowledged; and this instrument, or deed, or its record, or a properly certified copy, should have been given in evidence. The existence of such deed was not collaterally in question, and though the plaintiffs in error accepted it, when shown in evidence it might prove to be wholly defective, as performance of the condition precedent. "Accepted" in this testimony means simply received, not satisfied with. "I executed a deed," is swearing to a conclusion of law; "They accepted a deed," is equally a conclusion of law.

As the plaintiff below claimed to show a "signing off" only by delivery of all the assets covered by such agreement, it was competent for the defendants to show that there was no such delivery.—2 *Greenl. Ev.* §§ 135, 136.

2. The judgment in the Circuit Court of Livingston county in the case of *Samuel Grimes v. Daniel Richards* and *William E. Thompson*, was not evidence as against the defendant C. B. Thompson, in this cause. He was no party in that cause, and never had a day in Court. It may have been for too large an amount.—4 *Greenl.* 75; 7 *Id.* 237; 17 *Vt.* 464.

3. It was the province of the Court to determine in what way the "signing off" required by the agreement of December 1, 1862, should have been made.—2 *Pars. Con.* 3, 6, *and note.*

4. It was error to refuse to charge the jury, that the "signing off" required by the agreement of the 1st December, 1862, must be in writing, unless the evidence proves the defendants, and both of them, to have accepted a parol transfer.

THOMPSON v. RICHARDS.

5. It was error to refuse to charge the jury, as requested by the defendants' attorney, as follows:

*a.* There was no evidence that defendant, Wm. E. Thompson, accepted a parol transfer of the assets.—8 *Black.* 256.

*b.* The "signing off" implied a delivery of such assets as were in the actual possession of Richards. — *Hilliard on Sales*, 1.

*c.* A *fortiori*, a parol transfer of such assets implied and required a delivery, unless the defendants were satisfied with a part delivery.—5 *Conn.* 199; 6 *Gray*, 9; 4 *B. and C.* 246; *Comp. Laws*, § 3184.

*d.* There was no evidence going to show a performance of the condition precedent.

*e.* The plaintiff must show that he has paid the judgment of Grimes, or satisfied it, before he can recover.—*Sedgw. on Das.* 305, *et seq.*

*f.* The agreement of 1st December, 1862, was to plaintiff an agreement of indemnity only.—*Sedgw. on Das.* 305, *et seq.*

*g.* The admission of satisfaction with the performance of the condition precedent of C. B. Thompson, would not preclude Wm. E. Thompson from demanding of Richards a written "signing off."—2 *Comst.* 512, 524.

*M. B. Wilcox*, for defendant in error.

1. It was clearly competent to show that Richards executed and delivered a deed to the Thompsons, which they accepted as a conveyance of the Iowa and Indiana lands. This evidence simply shows that Richards performed this part of the contract in a manner satisfactory to them. The contents of the deed were not inquired after, nor was it material so long as they accepted it as a "signing off" of his title to the land.

2. The judgment in the Circuit Court was properly admitted. The liability of the Thompsons was co-extensive with the liability of Richards and Thompson to their creditors. When the liability of the Thompsons was established, this

judgment was admissible, as the quantum of damages.—4 *Term.* 590; 4 *Binn.* 80; 14 *Johns.* 81.

3. Exceptions 2, 4, 5, are based upon the rejection of testimony to prove that Richards did not deliver all the property and had converted and secreted a portion of the same, embraced in the agreement sued on.

This testimony could only go to recoup damages. This anomalous method of adjusting the equities between parties is confined strictly to such damages as a defendant has sustained because the plaintiff has failed to perform his part of the contract upon which he sues,—4 *Sandf. Sup. Ct.* 147; and is only proper where a defendant can bring a cross action for a breach of the same contract by the plaintiff.—5 *Porter, Ind.* 176; 34 *Ala.* 659.

This contract is one that is not capable of a half or partial performance on the part of Richards; he has either conveyed his interest, or he has not. If not, they have no claim to the property alleged to have been converted; if he has, then there is a full performance on his part.

But the Thompsons have always treated this contract as performed by Richards. By virtue of it they have received over ten thousand dollars of property, aside from the Iowa and Indiana lands; and claiming to receive property alleged to be secreted, recognizes the fulfillment of it by Richards. Charles B. Thompson admits that Richards had done all he agreed to do, that "there was nothing more for him to do or to sign." This admission binds both.—1 *Greenl. Ev.* § 174, *and cases cited in note* 3.

4. The rule of damages was right if the plaintiff could recover anything but nominal damages. There was no error in not charging the jury in what way the "signing off" should be done. The only question was, has Richards "signed off" in any manner which is satisfactory to the Thompsons? That was a question of fact, and was properly left to the jury.

Whether the Thompsons accepted a parol transfer, or

whether William E. ever accepted or expressed himself satisfied with a part delivery of the property, if of any consequence whatever, were questions of fact for the jury.

It was not necessary to show that Richards had paid the judgment to enable him to recover. This precise question was settled by this Court in 1 *Doug. Mich.* 267.

CHRISTIANCY J.

The Court erred in allowing the plaintiff, who was sworn as a witness, to testify " that he executed and delivered to the defendants a deed of the company's lands in Iowa and Indiana, which they accepted." The object of the proof was to show performance by the plaintiff of the condition upon which the promise of the defendants was based. The deed was directly in issue and should have been produced and proved in the ordinary way. It was for the Court, and not the witness, to judge whether the instrument he called a deed was such in law, whether, in legal effect, it was a conveyance of the land; if not, the mere fact that the defendants accepted the paper, would not constitute performance by the plaintiff.

The second error assigned is the refusal of the Court to allow the cross-examination of the witness for the purpose of showing that he was mistaken in his statement on the direct examination, that he delivered to the defendants all the promissory notes belonging to the firm of Thompson and Richards, and for the purpose of showing, as the defendants proposed, that he had in fact used sixty-nine of them, and that at the time of the agreement he had in his possession a large amount of the notes of the firm, and other property, covered by the agrement, which he fraudulently secreted and refused to deliver.

It would seem from the bill of exceptions, in connection with the argument of the counsel for defendant in error, that the Court, in excluding this cross-examination, must have acted upon the idea that the non-delivery of a part of the

property and notes by the plaintiff, could only be shown in reduction of damages, by way of recoupment, and not in bar of the action; and there being no notice of recoupment under the general issue, the evidence was inadmissible. Had this, however, been a proper case for recoupment, in which the defendant could only set up the non-delivery of a part of the property in reduction of damages, still the rejection of the proposed cross-examination would have been clearly erroneous under the most restricted rule ever adopted, where cross-examination is allowed at all. The witness had testified in chief to the delivery of all the personal property and notes of the firm. The cross-examination related directly to the same subject matter, and to the identical facts stated by him in his direct examination. The defendants would have had a clear right, upon any theory of the action or defense, on cross-examination, not only to show that a part of the property had not been delivered, but that there had been an entire failure to deliver any part of it. Even upon the theory of the defense which the Court seems to have adopted, they had a right to draw out on cross-examination any thing which would tend to contradict, weaken or modify the evidence he had given on his direct examination, or any inference which might have resulted from it, tending in any degree to support the plaintiff's case. If for no other purpose, they were certainly entitled to it for the purpose of testing the credibility of the witness, or to show him unworthy of any credit. But this is not the only ground; it might have explained away the effect of his direct testimony, without any imputation of a want of veracity. It might have completely nullified or greatly modified the effect of his testimony in chief; and, until such cross-examination should have been had or waived, the evidence given on the direct examination should not have been allowed to go to the jury.

But this was not a case for recoupment. The plaintiff sued and declared upon the special contract, and not upon an implied contract, to pay for the property which was delivered

to and appropriated by the defendants. Having sued and counted only upon the express contract, he was bound to show performance on his part of the condition upon which the promise of the defendants was based, or he could not be allowed to recover at all. See *Allen v. McKibbin*, 5 *Mich.* 449.

The defendants, therefore, had a right, not only to show the non-performance of the condition, by cross-examination, but to introduce evidence for the same purpose in their defense, tending to show such non-performance. All such evidence would go to the whole cause of action. Evidence of this kind was offered on the defense, but excluded by the Court. This was clearly erroneous. The second, fourth and fifth errors are therefore well assigned.

The Court also erred in admitting the judgment in favor of Grimes against the plaintiff and William E. Thompson, to which Charles B. Thompson was not a party, and in holding that judgment to be the measure of damages. Had the contract been one of indemnity merely, as contended by the counsel for plaintiffs in error, and the judgment had been against the plaintiff and both defendants, it might have constituted the measure of damages; but the contract was to *pay* the debts of the firm, and not merely to indemnify against them.—*Hall v. Nash*, 10 *Mich.* 303; *Butler v. Ladue*, 12 *Id.* 173. Neither previous payment by, nor a judgment against the plaintiff was necessary to perfect his right of action. The contract was to pay all the *indebtedness* of the firm, not to pay any *judgment* which might be rendered thereon. And whether the judgment might have been evidence and constituted a measure of damages, as against William E. Thompson, had he been the only contracting party and sole defendant, is a question which does not here arise. This is a joint action against two defendants, and the plaintiff must establish a joint liability, or fail in his suit against both; the several liability of one will not sustain the action. Charles B. Thompson was a stranger to the judgment

and is not to' be affected by it. The third and sixth errors are therefore well assigned.

Several questions were raised as to the proper interpretation of the contract, what would constitute a "signing off" by the plaintiff of the rights, title, property, profits and lands of the company, within the meaning of the contract, and the duty of the Court to charge the jury in this respect. It was the duty of the Court to construe the contract, and to charge the jury upon any question which might arise upon it. We think the agreement, when fairly interpreted, with reference to the circumstances existing at the time, the nature of the property and the object the parties had in view, would, as to all tangible personal property and negotiable paper, payable to bearer, and which would pass by mere delivery, be satisfied by a delivery to the defendants, so as to place the same in their full possession and control, and an acceptance of the same, unless written evidence of the transfer was specially requested. But if the defendants should refuse to accept such delivery without written evidence of the transfer of title, they would have the right to insist upon it, and might refuse to accept a delivery without it; for, though the title would pass without the writing, yet owing to the previous relations between Charles B. Thompson and the plaintiff, disputes might arise between the plaintiff and the defendants as to the ownership, and written evidence would be more valuable to the defendants and more easily preserved; and such evidence would in such case come fairly within the terms and intent of the contract.

As to any contracts, accounts or choses in action, the property in which would not pass by mere delivery, the plaintiff, to fulfill the condition of the contract, should have assigned or conveyed his interest in them by writing, and delivered them, so far as susceptible of delivery, to the defendants, so as to put them under their dominion and control; and the interest of the plaintiff in the lands of the

firm should, of course, be conveyed by deed of conveyance, properly executed, acknowledged and delivered.

The condition of the agreement could be performed by the plaintiff only by a transfer in the proper manner, as above indicated, of all the property and rights of the plaintiff in the firm. A transfer of a part only, by delivery or otherwise, would not satisfy the condition, unless the defendants, knowing that all had not been thus transferred, chose to waive the transfer or delivery of the residue. And such waiver, to be effectual, should, we think, be the act of both the defendants. A waiver by one would not bind the other, nor, in this suit, be effectual as to either. There is no evidence tending to show that defendants were partners, either at the time of sale or afterwards. One cannot, therefore, be considered the agent of the other for the purpose of such waiver, without proof of such agency; and we can discover no sound or safe principle upon which a waiver by one of these defendants, or the admission of one, as proved in this case, should bind the other. The waiver, if effectual, constituted in legal effect an alteration of the contract, and was equivalent to the making of a new contract, by which the defendants would be bound to pay all the debts of the firm upon the plaintiff's transferring to them his interest in *a part* of the property of the firm, when by the original contract they had only *agreed* to pay those debts upon his transferring his interest in the *whole*. And, upon principle, we think it would require the same authority from the one to bind the other by such new or altered contract, as would have been required to authorize him, as agent of the other, to bind him by the original contract, had that been made through such agency. If one can bind the other by a waiver of part of the condition, we see no good reason why he may not bind him by a waiver of the whole. Payment to, or a release by one joint creditor stands upon quite different grounds.

The admissions of Charles B. Thompson were evidence as against him, and it was competent for the plaintiff to intro-

duce them in this case, but to render them of any avail, he should also have shown admissions of a like tendency by the other defendant. If he failed to do so, the admission of Charles B. should have been withdrawn from the jury. Such admissions are often made under a misapprehension, and might have been made in this case in ignorance of facts known to the other defendant. Charles B. might have made the admission of full performance, knowing there had been but a partial performance, but with the intention of waiving the performance of the residue. Such considerations might not, it is true, exclude the admission of one as against the other of two joint creditors or payees, when the admission related to payment or satisfaction; because it is a part of the legal effect of the joint contract, that payment may be made to either, and will operate as payment to both, and no new contract or liability is thereby created; and if one of them choose to admit the payment of a debt due to him and the other jointly, when it has not been paid in fact, he may thereby render himself liable to account to the other for the proportion due the latter. But the defendants were not, by this contract alone, joint creditors, nor was the plaintiff thereby bound to them for the payment or performance of any thing. He does not sign the contract and was not bound by it. His performance was optional — merely a condition precedent to the undertaking of the defendants, and until performance or waiver of performance, they were neither liable jointly nor severally. The admissions of the one cannot, therefore, bind the other on the ground of a joint liability upon the contract, (if that were sufficient to admit them). The joint liability cannot be proved by the admission, when the admission is necessary to establish the joint liability. This would be reasoning in a circle.

If the condition had not in fact been fully performed, the admission by Charles B. Thompson that it had been thus performed could only operate as a waiver, and this, as already shown, would be equivalent to a new contract. With-

out performance or waiver there was no liability. Either performance or waiver would create a liability. The case therefore is one in which the admissions of one, if allowed to bind the other, would tend *to create a liability* on the part of the latter, and to bind him by a contract to which he never assented.

Such a power in one joint contractor to bind another, we think unreasonable and dangerous. — See *Bell v. Morrison,* 1 *Pet.* 351; *Van Keuren v. Parmelee,* 2 *Comst.* 523; *Lewis v. Woodworth & Pratt, Id.* 512; the reasoning of which, upon this point, we entirely approve; see also *Shoemaker v. Benedict,* 1 *Kern.* (11 *N. Y.*) 176. There is no evidence in the record tending to show that William E. Thompson admitted performance of the condition by the plaintiff or ever consented to the acceptance of a part for the whole, or that he ever waived any part of the condition. Nor was there any evidence tending to show that Charles B. Thompson was his agent, or had any authority to accept such partial performance, or to waive his rights in any respect.

The judgment must be reversed, with costs, and a new trial granted.

CAMPBELL and COOLEY JJ. concurred.

MARTIN CH. J. concurred in the result.