## THOMAS McKENZIE v. JOHN SYKES.

*Construction—Written contracts and oral negotiation.*

The meaning of written contracts must be determined by the court, but the effect of oral negotiations and understandings must be determined by the jury as matter of fact.

If therefore one party say to another "Go on and cultivate my farm and raise crops and I will do what is right by you," the court cannot instruct the jury that by this he means "Go on and I will do what is right by you in respect to charges," instead of that he would do what is right in other way or manner. The jury must determine both what is said and what is meant by it.

Error to Ionia. Submitted Oct. 25. Decided Jan. 5.

REPLEVIN. Defendant brings error. Reversed.

*A. A. Ellis* for plaintiff in error.

*A. B. Morse* for defendant in error.

COOLEY, J. This is an action of replevin for a quantity of wheat which was raised by Sykes on the land of McKenzie, who is his father-in-law, while the parties were living together upon it. The chief controversy concerns the bargain under which the wheat was raised.

Both of the parties, and also their wives, were sworn and examined as witnesses. The testimony of Sykes tended to show that after his marriage with McKenzie's daughter in September, 1878, it was talked over between himself and McKenzie that he should live in the house with McKenzie, work the farm and raise what he could off it, let McKenzie have his living and his stock kept, and Sykes have the remainder; that under this arrangement he went on and sowed winter wheat, raised and harvested 701 bushels, drew off a part of it, when he was forbidden by McKenzie to take the remainder and therefore replevied it. He admitted that McKenzie assisted him somewhat in the work. Mrs. Sykes's

testimony supported to some extent that of her husband. On the other hand McKenzie testified that he told Sykes he might go on and work the farm and should have what was right, and when the wheat was harvested and threshed, he was willing to let him have one-half. This he seems to have thought was liberal, as he did a large share of the work and bore a part of the expense himself. Mrs. McKenzie seems to have heard no bargain but much vague talk.

On this evidence the question for the jury was whether Sykes owned the wheat, or on the other hand was tenant in common with McKenzie. The circuit judge instructed the jury that if Sykes was to cultivate the farm and have what he raised, allowing McKenzie his living and the keeping of his stock, then the title to the wheat was in Sykes. He also gave the following instructions: "If the jury find that McKenzie said to Sykes 'You carry on this farm and manage it, and I will do what is right by you,' this means that 'upon settlement at the close of our arrangement'—or of the year, perhaps—'I will do in the matter of charges against you what is right.' So I say if the jury find the testimony upon that point as I have stated, it would not make them tenants in common."

It seems therefore to have been the opinion of the circuit judge that whether the one party was believed or the other, the title to the wheat was in Sykes. But the difficulty with this instruction is that he assumed to interpret for the jury the oral negotiations of the parties, and put a construction upon certain oral terms provided the jury should find they were in substance made use of. In doing this he took upon himself functions which belong to the jury exclusively. It is for the court to interpret the written contracts of parties; for when they have assented to definite terms and stipulations and incorporated them in formal documents, the meaning of these, it is supposed, can always be discovered on inspection; nothing which is within the purview of the contract is left in doubt and there is of course nothing to submit to the jury. *Thompson v. Richards* 14 Mich. 172. But where

the terms of a negotiation are left to oral proofs, the question what the parties said and did, and what they intended should be understood thereby, is single and cannot be separated so as to refer one part to the jury and another part to the judge; but in its entirety the question is one of fact. *Strong v. Saunders* 15 Mich. 339; *Maas v. White* 37 Mich. 126; *Estate of Young* 39 Mich. 429; *Engle v. Campbell* 42 Mich. 565. If therefore McKenzie in substance told Sykes to·go on and cultivate the farm and he would do by him what was right, it is not within the province of the judge to say that by this McKenzie meant he would do what was right in the matter of charges; but it was for the jury to consider all the conversation of the parties which made up the negotiation between them, and from the whole, in the light of the surrounding circumstances, determine according to their best judgment what was the meaning. In the light of all the facts the jury might perhaps conclude that the bargain, as the parties understood it, was, that McKenzie would pay for his son-in-law's services what was right, or that he would divide the crop with him as was right; but however that may be, it is sufficient for the purposes of this case that the result of the negotiations must be determined by the jury, not by the court.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.