ADAMS, Respondent, v. SCOTT, Appellant.

(157 N. W. 321.)

(File No. 3809.    Opinion filed April 11, 1916.    Rehearing denied July 10, 1916.)

1. **Evidence—Secondary Evidence of Lease—Failure to Produce Original—Foundation, Necessity of Reasonable Diligence.**

    In a suit for libel, in which the complainant alleged past and future loss to plaintiff in the value of his lease of a hotel property in the sum of $1,000, the contents of which lease were vital elements affecting its value and the amount of damages, held, that plaintiff's testimony that he thought he could locate the lease, that he thought that a third person named had it, and his subsequent testimony that he had made further examination and effort to find it "through all my papers, my safe, and pigeon holes," was insufficient foundation for admission of secondary evidence of its condition, and such admission was prejudicial error; that reasonable diligence is necessary to produce the best evidence before secondary evidence becomes competent; that if the paper is shown to be in some particular place

or custody, that place should be searched in good faith, or the person in whose custody it is shown to have been should be produced; and some legal excuse should first be shown for failure to produce the paper.

**2.   Libel and Slander—Damages to Hotel Leasehold—Lessened Gross Receipts, as Basis of Damages—Error.**

In a suit for damages for libel for past and future loss in value of plaintiff's leasehold of a hotel property, held, that the measure of damages is the diminution of net income from the business, and not the lessening of gross receipts thereof after publication of alleged libel.

**3.   Libel and Slander—Damage to Leasehold—Damage to Business Distinguished from Damage to Lease—Unexpired Term.**

In such case, the alleged libel having been published about three years before the expiration of the lease, held, that the damage to the value of the leave when actually sold about a year after the publication, was to a lease for two instead of three years to run. Held, further, that evidence, and instructions to the jury thereunder, tending to show and recognize damages for diminution of value of the lease during the year after publication, were incompetent and erroneous, and constituted prejudicial error.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by George E. Adams, against Mark D. Scott, to recover damages for libel. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Judgment and order reversed, and cause remanded for new trial.

*Grigsby & Grigsby,* and *Charles P. Bates,* for Appellant.

*George W. Egan,* for Respondent.

(1) To point one of the opinion, Appellant cited: Noyes v. Belding, 5 S. D. 610;; Jones on Evidence, Sec. 212.

SMITH, J. This case was before us upon questions involving certain allegations of the complaint as to damages, in Adams v. Scott, 33 S. D. 194, 145 N. W. 446.

Plaintiff alleges that for several years past he has been a resident of Sioux Falls and proprietor of the Grace Hotel in said city; that said hotel had the respect of the people and was patronized generally by the public, and that plaintiff himself enjoyed a good name in the commercial world; that the defendant is the owner and proprietor of a weekly newspaper printed and published in said city, and of general circulation in the commun-

ity; that the defendant wrongfully and maliciously, and for the purpose of injuring and harassing this plaintiff, and to destroy his standing in the business world, and to hold him up to hatred, ridicule, contempt, and obloquy, and to injure the reputation and standing of the Grace Hotel as a place of public patronage, did publish in said newspaper the following false, malicious, defamatory, and unprivileged matter in words and figures as follows, to wit:

"Who Is Adams?

"That Is Really What a Lot of People Would Like to Know—
Claims to be a Fighter.

"The so-called Good Government League which is seeing what it can do to keep things stirred up in Sioux Falls, and has recalled Commissioner Soule as an experiment, is out with an announcement telling the public who Geo. Adams is, its candidate against Soule. He appears to have held a position as ticket agent for a railroad so is competent to run a city government. At the present time Mr. Adams is running a lodging house in this city known as the Grace Hotel, and so far as the Journal knows it is probably a fair sort of place. But some people have made remarks about this hotel and the kind of place it was, and Mr. Adams has gone around with a chip on his shoulder declaring he was going to whip any one who made remarks about his establishment. This does not show very good judgment on his part, especially as a man who was sent to the federal prison for five years for driving a girl insane with the letters he wrote was shown to have abused her at this hotel, undoubtedly without the knowledge of the proprietor, but it was done just the same.

"Mr. Adams hardly has the qualifications to be a commissioner of the city and the people of Sioux Falls would be foolish to elect him, especially as there are no grounds for the recall of Commissioner Soule."

The answer admits the publication, alleges that it was with good motives, for justifiable ends and without malice, and that said article was true in fact at the time of its publication. As a further defense, the answer alleges that at the time of said publication plaintiff was a candidate for the office of commissioner in a pending city election; that defendant, to inform himself as

to the truth or falsity of the matters referred to in said publication, did, before publishing said article, make inquiry among the citizens and electors of said city, and was informed of the various matters alleged in said article, and, among other things, that remarks were made among the citizens of the city as to the character and reputation of the hotel under plaintiff's management; that defendant was further informed that, shortly prior to plaintiff's candidacy, one Bartell had procured and taken a girl to the said hotel and had kept her at said hotel for several days, and did then and there have carnal intercourse with her; that when said girl was discovered at said hotel by her friends she was violently insane, and that at the time of said discovery certain obscene letters were found in her possession written to her by said Bartell; that said Bartell was then and there arrested by the United States authorities, and subsequently convicted in the United States court of the crime of mailing obscene literature to said girl, and by reason of such conviction was sentenced to a federal prison for five years, and that the girl had been taken to a hospital or asylum for the insane and confined therein; that the defendant was further informed that the reputation of said Grace Hotel was bad, and that it was common talk that said hotel was a place where men and women went to meet for illicit intercourse, and that divers arrests had been made of men and women occupying rooms at said hotel, who were convicted of and fined for such offense; that defendant, relying upon the information so received by him, and believing the same to be true, published said article for the sole purpose of acquainting the public with the qualifications of the plaintiff for said office of commissioner; and that said publication was with good motives, for justifiable ends, without malice, and in full reliance upon the truth of the statements made to him, and in the belief that it was his duty to bring said matters to public notice. Plaintiff pleads four distinct items for damage: First. Injury to the good name and reputation of the Grace Hotel. Second, Damages sustained through loss of patronage after said publication. Third. "To direct loss which plaintiff has sustained in the past and will sustain in the future in the value of his lease on the said property as a hotel, store, and restaurant, said lease being dated June 1, 1910, and expires June 1, 1915. Signed by

A. E. Dalton, lessor, and George E. Adams, lessee, covering the premises described as the second and third floors of the 'Parker Block' situated at Nos. 215 and 217 North Main Ave. in said city of Sioux Falls, South Dakota, in the sum of $1,000.00." Fourth. To damages for disgrace, humiliation, mental pain and suffering, and to his standing as a citizen, as a direct result of said publication. Jury trial. Verdict and judgment were for plaintiff in the sum of $2,666.80. Motion for a new trial on the grounds of newly discovered evidence, insufficiency of the evidence to sustain the verdict, and errors of law occurring at the trial, was overruled, and defendant appeals from the order and judgment.

[1] Appellant presents numerous assignments of error; but inasmuch as a new trial must be granted, for reasons hereinafter stated, we deem it unnecessary to review them, as most, if not all, of them are disposed of by the decision of this court in Egan v. Dotson, 155 N. W. 783, and may be obviated by proper care at another trial.

Plaintiff sought to prove damages by reason of the alleged libelous publication, to the value of his lease as claimed in the third ground of damages above stated. As a witness in his own behalf, he testified that he had a written lease of the property; that he assigned the lease at the time he sold the hotel; that he tried to find the man that had the lease. He was then asked by his counsel:

"Q. Do you think we can locate that lease? A. I presume we can. Q. Who has it? A. Mr. Griesdale, I think, has it."

He was then asked:

"Q. Do you know the reasonable market value of this lease after the 20th day of September, 1912?"

The trial court then stated:

"You had better get the lease in first."

After an adjournment of court, plaintiff was recalled. As a further foundation for secondary evidence, he testified:

"I have made further examination, and I did not get the lease which was in effect on the 20th of September, 1912. I have made an effort to find it. I went through all papers, my safe, and pigeonholes."

Upon this statement he was permitted, over proper objec-

tions, to offer secondary evidence both oral, and in the form of a purported substituted lease, as to the contents of the original lease described in the complaint. These rulings are assigned as error.

The contents of this lease were vital elements affecting its value and the amount of damages, and necessarily involved the document itself. Its contents were not collateral, but were of the substance of the issue as to damages. It is elementary that secondary evidence of the contents of written instruments cannot be given unless some legal excuse is shown for failing to pro- duce the original.

"It is incumbent on litigants to prepare their testimony in advance, and if it is discovered during the trial for the first time, that the best evidence of the fact to be proved is in writing, the rule that the writing must be produced will nevertheless be enforced." Jones on Evidence, Civ. Cas. § 200.

Where the contents and substance of the instrument are material either to the issues between the parties or to the credit of witnesses, the rule applies. Goodson v. Bros., 111 Ala. 589, 20 South, 443; Primrose v. Browning, 56 Ga. 369; Thompson v. Richards, 14 Mich. 172. Reasonable diligence is necessary to procure and produce the best evidence before secondary evidence becomes competent.

"When the paper from its nature has some particular place of deposit, or is shown by the evidence to have been in some particular place or in the custody of some particular person, that place should be searched in the utmost good faith, or the person in whose custody it is shown to have been should be produced. While an honest and diligent search is sufficient, there is no reasonably certain proof of loss unless it appears by their own testimony that it is not in the hands of any of those where it might reasonably be supposed to be. The testimony of the last custodian of the paper or record should be produced, and, if dead, his representative or successor should be called. If the paper is so traced that the possession may be in the hands of either of two persons, both should be sworn before secondary evidence will be allowed." Jones on Evidence, Civ. Cas. § 213.

The application of this rule to the facts in this case is so apparent that discussion becomes idle. The prejudicial effect of

incompetent evidence to prove the contents of the lease is plain. Over proper objections, respondent was permitted to offer evidence as to the value of the lease before and after the publication of the alleged libelous article, and testified that the damage to the value of the lease was from $1,000 to $1,500.,

[2] Two other matters in this connection are suggested by the record before us, one of which is not assigned as error, but may become material at the new trial, and we deem it proper to call attention to it briefly. First. Plaintiff sought to prove damages to his hotel business by evidence tending to show the lessening of the gross receipts of the business after the publication of the alleged libel. For reasons which seem quite obvious, the correct measure of damages would be the diminution of the net income from the business.

[3] The second is perhaps sufficiently presented by the assignments of error: The alleged libel was published in September, 1912. About 12 months thereafter, plaintiff sold his lease. During the intervening year he had full and undisturbed possession, and conducted his hotel business under this lease. The lease performed its function, and was of as much value to him during that year as though no libel had been published. The damage therefore accruing during that year was solely to the hotel business. At the time of the publication, the unexpired term of the lease was about three years. The damage to the value of the lease when actually sold, a year later, was to its value as a lease having two instead of three years to run. This is apparent when we consider that, if plaintiff had retained possession and continued the business under the lease until its expiration, the only damage recoverable would have been to the business itself—and not damages to the value of the lease. The evidence and instructions of the trial court were such that the jury, in assessing damages, might and probably did allow damages for diminution of the value of the lease as of the day before and the day after the publication of the alleged libel. This would certainly amount to prejudicial error.

The order and judgment of the trial court are reversed, and the cause remanded for a new trial.