LOEWENTHAL COMPANY, Inc., Appellant, v. RIBNICK, et al, Respondents.

(263 N. W. 710.)

(File No. 7762.  Opinion filed December 13, 1935.)

See, also, 63 S. D. 431, 260 N. W. 267.

*Louis A. Smith,* of Chicago, Ill., and *B. A. Walton,* of Aberdeen, for Appellant.

*Van Slyke & Agor,* of Alberdeen, for Respondents.

WARREN, P. J.  The plaintiff corporation did a wholesale business in waste material, old rubber, and leather at both Chicago and Akron, Ohio.  They purchased such material on the open market and supplied it to various factories.  The evidence in controversy is in part as follows: In March, 1927, plaintiff's traveling purchasing agent, David Birk, canvassed South Dakota, in an attempt to buy scrap material and rubber.  He called upon the defendants for the purpose of buying a quantity of such material that defendants had on hand.  The defendants refused to sell, and it would seem that a tentative agreement was reached, whereby the defendants would ship the plaintiff corporation considerable of such goods, that plaintiff would pay the freight thereon, hold the goods in their warehouse for the defendants until such time as the defendants wished to sell, and that in the meantime the defendants were not to pay any storage charges thereon.  There was also an option to the plaintiff in which they were to have the first chance to buy the material providing they met the price of competitors. It would seem that the plaintiff's agent, Birk, told the defendants that he would submit this proposition to his company and advise the defendants whether or not the plaintiff would approve such an agreement.  Shortly thereafter Birk long-distanced the defendants stating that the plaintiff had authorized the transaction. Afterwards a written statement, in the nature of a confirmation of the oral agreement, was sent to the defendants by the plaintiff corporation.  The document is rather vague and indefinite, but it does contain the significant fact that plaintiff was to charge no storage, and it also contained the statement that, "price is to be determined at the time that you are ready to sell, based upon legitimate competition."  Defendants shipped the goods, a large share of which was immediately sold by the plaintiffs, and the balance was stored in their warehouse in Akron.  Thereafter the market for waste ma-

terial and old rubber rapidly declined. At various times during the next two years, the plaintiff requested the defendants to sell. The defendants kept refusing to do so, until the plaintiff sold a like amount of similar goods, and credited the money received to defendants' account. The amount received was less than the amount which plaintiff had advanced in the form of freight, and the plaintiff is now bringing this action to recover the balance due them. Defendants, in answering the complaint, set up a counterclaim for the market price of the goods at the time they were shipped, less freight charges paid by plaintiff. Defendants claim that plaintiff corporation had no authority to sell the goods, and that when they did sell a considerable portion thereof, immediately upon their arrival, that such sale operated as a conversion of the defendants' property by plaintiff, and that therefore defendants are entitled to damages in the amount of the market price of the goods when shipped less freight charges paid by plaintiff.

The facts were submitted to a jury which made a special finding to the effect that the parties by their contract did agree that the identical material shipped by the defendants to the plaintiff was to be kept in storage by the plaintiff until the defendants were ready to sell; and the jury further found that the parties by their contract did not intend that the plaintiff, Loewenthal Company, might sell the identical goods shipped and maintain in place thereof an equivalent quantity of similar merchandise. Findings and conclusions were made by the trial judge in favor of the defendants, allowing them the market price less freight at the time the plaintiff appropriated and sold a considerable amount of the goods in question.

Thereafter a judgment was entered in favor of the defendants and against the plaintiff. The plaintiff moved for a new trial. The motion was denied and an order entered. Plaintiff has appealed from the judgment and order denying the motion for a new trial. Examination of the record indicates no prejudicial error in the court's ruling on the receiving and rejecting of evidence. Both parties seem to have acquiesced in the court's instruction to the jury as no exceptions were interposed. Appellant in his brief states, "The only question involved is whether or not the plaintiff is guilty of conversion of the property and involves the interpretation of the contract, Exhibit 'A.'" We have exam-

ined the record quite closely for the purpose of ascertaining if there was sufficient evidence to sustain the issues submitted to the jury and the findings of fact and conclusions of law as made by the court, and we have come to the conclusion that there is sufficient evidence to warrant the returning of such a verdict and the making of the findings and conclusions as made by the trial court. There was a conflict in the evidence as to what the agreement really was, and, of course, in such a case, it is for the jury to determine what the contract was, and what was intended by the parties. This court has so held in the case of Belknap v. Belknap, 20 S. D. 482, 107 N. W. 692, 694. In that case, as in this, there was a sharp conflict in the evidence and the rule of law announced by this court in that case seems to cover the situation before us on all fours, and we quote:

"When the contract was in writing, or when the evidence as to the verbal contract is undisputed and there is no ambiguity in its terms, the court may properly construe it, but where, as in the case at bar, the contract was oral and the evidence conflicting as to what it was, the question was properly left to the jury. McKenzie v. Sykes, 47 Mich. 294, 11 N. W. 164; Carl v. Knott, 16 Iowa 379. The rule applicable to the construction of contracts is stated by the Supreme Court of Michigan in McKenzie v. Sykes, supra, speaking by Mr. Justice Cooley as follows: 'It is for the court to interpret the written contracts of parties; for, when they have assented to definite terms and stipulations and incorporated them in formal documents, the meaning of these, it is supposed, can always be discovered on inspection. Nothing which is within the purview of the contract is left in doubt, and there is, of course, nothing to submit to the jury. Thompson v. Richards, 14 Mich. 172. But, where the terms of a negotiation are left to oral proofs, the question what the parties said and did, and what they intended should be understood thereby, is single, and cannot be separated so as to refer one part to the jury and another part to the judge; but in its entirety the question is one of fact. Strong v. Saunders, 15 Mich. 339; Maas v. White, 37 Mich. 126; In re Estate of Young, 39 Mich. 429; Engle v. Campbell, 42 Mich. 565, 4 N. W. 301.'"

In this case, in our opinion, the terms of the negotiation were properly the subject of oral proofs. The oral evidence is conflicting. We are, however, mindful of the fact that there is in the

record Exhibit A, which is in writing, and which the appellant contends is the contract between the parties. In our opinion Exhibit A does not purport to be the contract entered into by and between the parties. It is not signed by respondent. At the most, it is a confirmation by appellant of the kind and quantity of goods, containing the statements, "there will be no storage charge on the above material," and "price is to be determined at the time you are ready to sell, based upon legitimate competition." Exhibit A was properly received in evidence as throwing some light upon the dealings between the parties at the time the contract was entered into, but, in itself, it is not sufficient to constitute the entire contract to the exclusion of oral testimony. The Exhibit A, with the oral testimony, was submitted to the jury for their consideration. They found that the identical material shipped by the defendant to the plaintiff was to be kept in storage by the plaintiff until the defendant was ready to sell, and, further, that plaintiff was not authorized to sell and maintain in place thereof an equivalent of similar merchandise. This special finding by the jury, we believe, is amply warranted by the evidence and it settles the controversy and the disputed issues as to what was the contract between the parties. We have carefully examined the record, as challenged by the assignments of error, and find no prejudicial error which would in any event change the result and work a reversal.

The judgment and order appealed from are affirmed.

All the Judges concur.