validity of the enactment in question is sustained, but the decisions in the later cases are placed principally upon the ground that the decisions in this case and in that of *Stevens v. Marshall*, had been adhered to and constituted a rule of property, upon the faith of which large sums of money had been invested and material interests of great importance had been established and built up; that the rule of such decisions could not be departed from without violating the salutary doctrine of *stare decisis*. It will be observed that the later cases in Wisconsin are founded upon an implied admission of the invalidity of the act, when considered as an original question. And while the validity of these enactments was maintained, principally upon the authority of the adjudications of the supreme court of Massachusetts, in similar cases, still the more recent and better considered cases are entirely opposed to the doctrine laid down at this early period in the history of our state. The case of *Tyler v. Beacher*, 44 Vt. 648, is a case which seems to be entitled to consideration upon this question, not only on account of the authorities which are there very fully collated, but for the vigorous and thorough reasoning which pervades the entire decision. It is highly probable that while the court of last resort in this state may feel bound to adhere to the doctrine of *Newcomb v. Smith*, so far as mills and mill-dams are concerned, that yet the doctrine will not in any case be extended beyond what has been expressly adjudicated.

STATE ex rel. DUNNING v. GILES, Clerk, etc.

1.  DISABILITY TO HOLD OFFICE.—The framers of the constitution, in adopting temporarily the territorial laws, did so that no inconvenience might arise in the change from territorial to state government; but it was not intended thereby to adopt and continue the political disabilities of the inhabitants of the territory to the citizens of the state.

2.  SAME.—The prohibition contained in the act of 1843 against sheriffs holding the office for more than two consecutive years, did not apply to persons elected at the first election authorized by the state constitution, though they held that office at the time the constitution took effect.

3.  ELECTION—INELIGIBILITY.—The fact that a candidate who receives the highest number of votes at an election for a particular office, is ineligible, does not render the votes cast for him void; nor is the person receiving the next highest number, though eligible, to be regarded or considered as legally elected or entitled to the office.*

(1 *Chand.* 112.)

MANDAMUS. This was an application for a *mandamus* as against *Giles*, the clerk of the board of supervisors of Dane county, who withheld from the relator a certificate of his election for that county, as sheriff, at the general election in

1848, and who gave to *Peter W. Matts*, the opposing candidate for the same office, a certificate of election as sheriff. *Dunning* and *Matts* were both candidates at the election for the office of sheriff.    *Matts* was the sheriff at the time of election, and received the greatest number of votes of any candidate, and *Dunning*, the relator, received the next highest number of votes.    This was the first election held under the constitution in 1848.

Two questions arose in the case :

1. Whether the person holding the office of sheriff at *the time of the adoption of the constitution* was eligible to that office at the next ensuing election.

2. If the then sheriff was ineligible, whether the person who, at that election, received the next highest number of votes, could be considered as entitled to the office.

There was no dispute in regard to the facts set out by the relator.

*Catlin & Abbott* and *Geo. B. Smith*, for the relator, insisted that the limitation of the duration of the office of sheriff, and his ineligibility to office for a second term, as provided by the territorial legislative act of 1844, applied to *Matts*, the former sheriff; that the act referred to, being in consonance with the provision of the constitution in relation to the limit of the office, it was in force at the time of the adoption of the constitution, and that, at the first election under the constitution, the incumbent was ineligible by reason of the prohibition of the act.

2. If, by the act of 1843, *Matts* was ineligible to the office, then all the votes cast by the electors for him were a nullity, and should be no further regarded, as respects the rights of others, than blank ballots, and should not have been counted or canvassed but for the purpose of being rejected. The votes thus cast could not and ought not to be estimated to the defeat or prejudice of an eligible candidate for the office. That the electors were bound to know, and did know, the

disability of *Matts*, and that the act of voting for him was a nullity. That *Matts*, being utterly ineligible, has no legal right or capacity to contest the election of the relator, and that any pretensions he may set up (the disability being admitted) cannot be entertained by the court in determining who is the officer elected.

*A. L. Collins* and *J. T. Clark*, on the part of the respondent, urged, that the constitution, and the act based upon its provisions, could not be retroactive in their operations to disturb vested rights previously acquired, and that the effect of the constitution, and the act passed under it, did operate in the prejudice of the rights of *Matts*; that *Matts*, having been elected under the provision of the act of 1843, and being still in office, and discharging the functions of his office, whether upon the principle of having been voted for and having received the greatest number of votes at the late election under the constitution, or otherwise, he is still the sheriff under the principle of holding over, recognized by the statute; and this upon the principle (whether he was eligible or not) that the claimant of that office did not have a majority of the votes cast at the election at which he claims to have been elected, and therefore can set up no claim here as against *Matts*; that, though *Matts* should be ousted from his office, yet the clerk of the board of supervisors cannot issue a new certificate; he has already exhausted his functions in that particular; that sheriffs in office at the time the constitution took effect, had an equal right with all others to be elected to that office, notwithstanding the provisions of the act of 1843; the prior holding the office under the statute did not work a prohibition to hold the same under the new government established by the constitution. By it, prior officers became *functus officio*, but not disqualified to become recipients of the same office previously held under a different jurisdiction. In other words, all previous disabilities were wiped out by the new organization.

Stow, C. J.   The questions to be decided in this matter are, first, whether a person holding the office of sheriff at the adoption of the constitution was eligible to that office, having received the highest number of votes at the late general election ?   And if not, second, whether the person who received the next highest number of votes was elected ?

As to the first of these questions, the court is, as nearly as can be, equally divided, the opinion now delivered being that of a constitutional majority only ; the judges of the first and second circuits dissenting.   As to the second question there is no difference of opinion.

*Peter W. Matts*, the defendant in interest, and *Dunning*, the relator, were both candidates, at the late general election, for the office of sheriff of Dane county.   *Matts* received the highest number of votes of any candidate, and *Dunning* the next highest ; and *Matts* was undoubtedly elected, unless rendered ineligible either by the second section of the seventh article of the constitution, which declares " that sheriffs shall hold no other office, and be ineligible for two years next succeeding the termination of their offices," or by the similar provision of the territorial law, which, it is said, not being repugnant to the constitution, was continued in force by the second section of the constitutional schedule.   The assumption that this provision of the old statute is not repugnant to the constitution, if warranted, would dispose of this branch of the case ; but I think it is unauthorized.

The constitution, in adopting temporarily the old territorial laws, did so "that no inconvenience might arise by reason of a change of government ; " at the same time taking care that only those laws which were not repugnant to the constitution should have force.   It adopted, for present purposes, the general municipal laws which it found in being, but regulated for itself its own political system.   On its face it purports to be, and in fact was, the work of the people—of the whole people—in which all had an equal and common interest and

right, and to which all owed a common duty and allegiance; and I cannot believe that a constitution thus broad and catholic ever meant, by adopting an old provincial law, to extend the political disabilities of certain *inhabitants* of the territory to the *citizens* of the state. I therefore regard this provision of the territorial statute as repugnant to the constitution, and consequently not adopted by it.

It remains to be seen whether the inhibition of the re-election of sheriffs, contained in the constitution itself, applies to those persons who happened to hold that office at the time of its adoption, or only such as should be elected under it. I think it applicable to the latter only; that it has reference to its own officers, and not to the territorial incumbents. The constitution did not perpetuate or modify any of the political rights of the *inhabitants* of the territory, for, properly speaking, they had none; but it created those rights for the *citizens* of the state—for all citizens—without preference or exclusion. All were alike its framers, and were equally enfranchised by it; and it seems to me harsh and invidious to say that some five-and-twenty of its citizens should be excluded from any of its privileges by the circumstance of their happening to hold, at the time of its adoption, a particular office under the expiring government.

Such being the opinion of the court, it is unnecessary to pass upon the second question, whether, in the event of the person receiving the highest number of votes being ineligible, the person receiving the next highest number is elected. But as the question was fully argued, and as it is one that may arise again, it is proper to say, that we are all of the opinion that the mere ineligibility of a candidate does not, as the law now is, render void the votes cast for him; that such votes should not be rejected, but should be counted by the canvassers, and that in the event of such ineligible person having the highest number of votes, the person having the next highest number is not thereby elected. If any public embar-

rassment is apprehended from this, such as that an office may remain indefinitely vacant, by reason of a majority of the . electors obstinately persisting in voting for an ineligible person, it is within the undoubted power of the legislature to prevent it, by enacting that all such votes shall be deemed void, and not to be counted.

The motion for a mandamus is denied.