June Term,
1861.

STATE ex rel. OFF vs. SMITH.

STATE ex rel.
OFF
v.
SMITH.

A person who is an alien and not a qualified elector of the county in which he resides, is not eligible to the office of sheriff, in this state.

The ineligibility of a candidate for an office at an election in this state does not render void the votes cast for him, and such votes should be counted by the canvassers; and if such ineligible person has the highest number of votes, the person who has the next highest number will not be thereby elected.

In an action of *quo warranto* to test the right of the person who received the highest number of votes for the office of sheriff to hold such office, the complaint alleged that the defendant was not a citizen of the United States at the time of said election or at the commencement of the action; that he had never declared his intention to become a citizen of the United States pursuant to the provisions of the laws of Congress relative to the naturalization of aliens; that he was born in a foreign country, and continued to reside there until he attained the age of twenty-one years; that he was at the time of said election, and ever since had been, a subject of Victoria I., Queen &c.; and that he was not at the time of said election, and was not at the commencement of the action, a qualified elector of the county for which he was elected. *Held,* on demurrer, that these allegations were sufficient to show the defendant's ineligibility to said office.

QUO WARRANTO. The case is stated in the opinion of the court.

*Palmer & Stark,* for relator.

*Enos & Hall, contra.*

*By the Court,* DIXON, C. J. Demurrer to the complaint in an action of *quo warranto.* The complaint, which was filed by the attorney general on the information of *Off,* shows that *Off* and the defendant were opposing candidates for the office of sheriff of the county of Jefferson, at the election held in November, 1860. The defendant received the highest number of votes, and next to him the relator received the greatest number cast for that office at the election. The canvassers counted all the votes, and gave to the defendant a certificate of election. He qualified and entered upon the duties of the office. The relator also qualified by taking the oath and giving the bond prescribed by law, and now claims that he is the lawfully elected sheriff, for the reason that the defendant, at the time of the election, was, and still is, an alien, and therefore ineligible. One point

December 11

urged in support of the demurrer was, that the fact of alienage is not sufficiently averred in the complaint.   The allegation is, "that at the time the said election was held, on the said sixth day of November, 1860, the said *Heber Smith* was not, nor hath he ever been, and is not now, a citizen of the United States, and that the said *Heber Smith* has never heretofore declared his intentions to become a citizen of the United States, pursuant to the provisions of the laws of congress in relation to the naturalization of aliens; and that the said *Heber Smith* was not born in any of the United States, or territories of the United States, and that he was born in a foreign country, to wit, in the province of Canada West, and continued to reside in that province from his birth until after he attained the age of twenty-one years; and that he was, at the time of said election, and ever since has been, a subject of Victoria I, Queen of Great Britain; and that he was not at the time of said election, and hath not been since, and is not now, a qualified elector in said county of Jefferson, and was not at the time of said election, and hath not been at any time hitherto, and is not now, legally qualified to hold, or eligible to, the office of sheriff of said county." We have not before us, nor are we able to procure, the law of congress upon which the objection of counsel was founded; but from our remembrance of it we are able to say that we do not think the objection well taken.   The averment that the defendant was at the time, and still continues to be, a subject of Victoria, Queen of Great Britain, is broad enough to cover any possible contingency which may arise under the laws of congress.

The remaining questions are:   1st.  Whether the defendant, being an alien and not a qualified elector at the time of his election, was eligible to the office.   2d.  If he was ineligible, whether the relator, who received the next highest number of votes cast, is entitled to the office.

The last question has been already settled in this state by the case of *The State vs. Giles*, 1 Chand., 112.   It was there held by the unanimous judgment of the court, that, in the absence of a statute declaring it so, the mere ineligibility of a candidate does not render void the votes cast for him;

that such votes should not be rejected, but should be counted by the canvassers; and that in the event of such ineligible person having the highest number of votes, the person having the next highest number would not be thereby elected.

The other question is not, in our judgment, any more difficult. The counsel for the defendant, in support of his claim, relied, for the most part, upon the absence of any constitutional or statutory provision prohibiting the election of aliens to offices of this kind, and argued thence that the electors are at liberty to confer them upon whom they please. He likewise cited the provisions of the constitution which prescribe the qualifications of the governor, and judges of the supreme and circuit courts, and declare that they shall be citizens of the United States and qualified electors of this state at the time of their election, and the clause which declares that no person shall be eligible to the legislature unless he is a qualified elector in the district for which he may be chosen, and shall have resided for one year within the state; and contended that, by implication from these, all other offices were open to whomsoever the electors might choose. These arguments are far-fetched, and when viewed in the light of those first principles of national law and policy which pertain to all independent popular governments, seem altogether inadequate to sustain the conclusions contended for. As to all such governments it is an acknowledged principle, which lies at the very foundation, and the enforcement of which needs neither the aid of statutory nor constitutional enactments or restrictions, that the government is instituted by the citizens for their liberty and protection, and that it is to be administered and its powers and functions exercised only by them and through their agency. The law is well stated by the justices of the supreme court of Massachusetts, in reply to questions proposed to them by the house of representatives of that state in February, 1811. Supplement to 7 Mass. R., 523. In discussing the question whether an alien could be a legal voter for senators or representatives, they say: "Now we assume, as an unquestionable principle of sound national policy in this state, that as the su-

preme power rests wholly in the citizens, so the exercise of it, or of any branch of it, ought not to be delegated by any but citizens, and only to citizens. It is therefore to be presumed that the people, in making the constitution, intended that the supreme power of legislation should not be delegated but by citizens. And if the people intended to impart a portion of their political rights to aliens, this intention ought not to be collected from general words which do not necessarily imply it, but from clear and manifest expressions which are not to be misunderstood." Again, speaking of a statute of that state which provided that the polls of aliens should be rated, and that the number of representatives to which the several towns should be entitled, should be proportioned to the number of rateable polls, they say: "If, by this provision, aliens would acquire any political rights, to the diminution of the rights of citizens, we should, for the reasons before given, strongly incline to believe that the legislature were restrained from making this provision. For as the political rights arising under the constitution are manifestly the rights of the citizens, the language of the constitution ought to be so construed, if practicable, that these rights should not be diminished by sharing them with aliens." These observations are as pertinent to our government and the condition of our people, as to those of Massachusetts, except that by our constitution the right of suffrage is accurately defined, and, together with most of the rights and privileges of citizenship, very generously and benignly bestowed upon such resident white persons of foreign birth as shall have declared their intention to become citizens, conformably to the laws of the United States on the subject of naturalization. Aside from these exceptions, which clearly and unequivocally manifest a contrary intention, the constitution as well as the statutes of the state are to be construed with reference to the fundamental principles above stated, and so as, if possible, to give them effect. Viewed in this light, it seems clear that the equivocal and uncertain implications to be derived from the provisions of the constitution to which we have been referred, ought not to be permitted to outweigh these generally received principles; and much

less that the absence of specific statutory or constitutional restraints should so operate. In declaring that the important offices of governor, lieutenant governor, and judges of the supreme and circuit courts, should only be filled by citizens of the United States, the framers of the constitution cannot be supposed to have had in mind the qualifications for other offices, or to have inserted the restrictions with reference to any influence which they might possibly be said to have upon them. They were undoubtedly introduced with reference to those provisions of the constitution by which the right of suffrage and privileges of citizenship are imparted to persons of foreign birth, who shall have declared their intention to become citizens, and who, unless restrained, would thereby, without the experience and qualifications required by the laws of Congress, to their becoming legal voters of the United States, and even though they had resided in the state but a single day, be eligible to these offices ; and *not* because they were deemed necessary for the purpose of excluding aliens who have not declared their intention to become citizens, from those or any other official positions, or from taking upon themselves the execution or administration of the laws of a government to which they are bound by no ties of allegiance or fidelity, and under which they possess no political rights. Instead, therefore, of showing that aliens may hold office, these provisions mark the more strongly the opposite and wiser policy ; and the inference sought is not only against that policy, and forced and irrational, but leads to the enormous absurdity that a person who, by the organic law of the state, has not one voice among thousands in designating by whom an office shall be filled, may himself be elected to such office and enjoy its franchises and perform its duties. We entertain no doubt, upon the facts stated in the complaint, that the defendant was ineligible.

The demurrer is overruled, with leave to the defendant to answer over on the usual terms, within twenty days, in case he shall be so advised.