State *ex rel.* HOLDEN vs. TIERNEY.

QUO WARRANTO — *Elective office: The question to be decided — More names on ballot than officers to be elected.*

1. In *quo warranto* as to an elective office, the question is, whether defendant, at the election under which he claims, received a majority of all the votes *which the canvassers had a right to count*.

2. Where only two persons are to be elected to a certain office at an election, ballots containing the names of three persons for such office (no one of them being obviously, on its face, a fictitious name), cannot be counted.

3. It makes no difference that one of the three is in fact ineligible to the office, since the question of his eligibility cannot be determined by the canvassers.

*Tierney* and one Noyes were elected, in 1865, justices of the peace in the town of Westport in Dane county, for the term of two years. In 1866, two other persons were elected justices for that town, one of whom did not qualify. In 1867 there were two justices to be elected for the full term to succeed *Tierney* and Noyes, and one to fill the vacancy created by said failure to qualify. One Kniffin was elected to fill said vacancy. On a majority of the ballots or "tickets" deposited, Noyes, the relator *Holden*, and one Powers, were named as candidates for the full term; on the others, the defendant *Tierney* and one Wheeler were named. *Tierney* claimed to have received a majority of all the legal votes cast at such election, and filed his oath and bond and entered upon the duties of the office. Powers is alleged in the complaint to have been an alien and not a qualified elector, and therefore ineligible. Noyes and Kniffin qualified and entered on their respective offices; but *Holden* did not qualify. At the election in 1868, two persons were voted for as justices for the full term of two years, and *Holden* was voted for as a justice "to fill the vacancy caused by the failure of any one being duly elected and qualified according to law to succeed" said *Tierney* the previous year. Thereupon he brought this action against *Tierney*, under the statute, to try his title to the office.

The answer alleges that the votes cast for Noyes, *Holden* and Powers, at the election in 1867, were illegal, because there were only two justices then to be elected for the full term; and that *Tierney* and Wheeler received a majority of all the legal votes cast, and were duly elected, etc. It also alleges that the persons who voted for Powers at that election believed him to be a duly qualified elector of said town and eligible to the office; and avers that defendant has no knowledge or information sufficient to form a belief as to allegations of the complaint not otherwise denied or admitted, which includes the allegation that Powers was not a qualified elector of said town, etc.

State ex rel. Holden vs. Tierney.

The relator demurred to the answer.

*Gregory & Pinney*, for the demurrer:

While it may be conceded that the votes given for Noyes and Powers were not sufficient to elect them, still they were sufficient to defeat *Tierney* and Wheeler. The case in principle is not distinguishable from *State* v. *Giles*, 1 Chand. 112, and *State* v. *Smith*, 14 Wis. 497. In either case the votes were not available to the party for whom they were cast, nor to carry out fully the intention of the party who cast them. Blanks, even, count against a party receiving votes, if the number of blanks exceed that received by the claimant. *Case of Yulee & Mallory* in U. S. Senate. The statute does not declare such votes void for all purposes; and the object of the law is accomplished by holding them ineffectual to elect the parties receiving them. The election is held to ascertain the popular will. Can it be said that the popular will of the town of Westport was in favor of the election of the defendant?

*Spooner & Lamb*, *contra*, argued that, it being admitted by the demurrer that Powers was eligible to the office of justice of the peace, the case is that of three persons all eligible, voted for on the same ticket, when there were only two to be elected, and under the circumstances it was clear that none of such votes could be counted (R. S. ch. 15, § 28; *State v. Ely*, 4 Wis. 420; *People v. Seaman*, 5 Denio, 409); and that even if Powers was ineligible in fact, yet the inspectors of election had no authority to pass upon that question, and their right to count said votes was not affected by it. 1 Chand. 112; 14 Wis. 497. Compare R. S. ch. 15, § 39, and 4 Wis. 420.

PAINE, J. At the election in the town of Westport in the spring of 1867, it was necessary to elect two justices of the peace for a full term of two years, and one to fill a vacancy. There were two tickets in the field, and on one of these tickets were the names of three persons, who were all voted for, for

the full term. On the other ticket two persons were voted for, for the full term, one of whom was the defendant; and it is conceded that he received a less number of votes than either of the three persons on the other.

The question to be determined is, whether the defendant has the right to hold the office by virtue of that election. This depends upon the question, whether the ballots with three names on, all for the full term, were entitled to be counted as votes. It has already been decided in this state, that where a majority of the votes cast at an election are for a person who is ineligible, they are still not void, but must be counted as votes, and that, therefore, the one receiving the minority is not entitled to the office. *State v. Giles*, 1 Chand. 112; *State v. Smith*, 14 Wis. 497. The same question has been determined differently by other courts. See *Gulick v. New*, 14 Ind. 93; *Queen v. Inspectors*, 90 E. C. Law, 954; *Regina v. Coaks*, 28 E. L. and Eq. 304.

But the rule established here will be adhered to. And the counsel for the relator insists that it is applicable in this case. If so, it controls it. But I think there is such a distinction in the nature of the votes in the two cases as makes that rule inapplicable. In the case of a single vote for a person who is ineligible, there is no difficulty in deciding what is the intention and choice of the elector. His ballot is in all respects certain and perfect. Hence there is no inherent difficulty in counting it as a vote, expressing in a full and legal manner the choice of the voter. The difficulty arises entirely from the fact that the person voted for is disqualified from holding the office.

But in the case now under consideration, the ballots are of an entirely different character. Three persons are voted for by each voter, when only two can be elected. What is the choice of the elector in such a case? It is manifestly impossible to tell. The insertion upon the ballot of a single name more than ought to be upon it, renders it as absolutely uncer-

Vol. XXIII.—28

tain as though a half dozen or a dozen were inserted. The result is, that such a ballot is void for uncertainty. It fails to express the choice of the elector, and consequently cannot be counted as a vote.

It is true that such a ballot furnishes evidence that there was an elector present at the election, who attempted to vote. But that is not sufficient. The majority required to elect is not of those who vote, and attempt to vote, but it is a majority of the legal votes. And to be counted as a vote, the ballot must express intelligibly the choice of the voter upon the matter to be voted on. *Eames v. Eames*, 16 Mich. 348. If two ballots are so folded together that the board are satisfied that they were voted by one elector, they are to be destroyed and not counted at all. R. S. ch. 7, § 51. The majority of the remaining legal votes would decide the election. It is true, in that case, there is an element of criminality, and it may be said that the voter justly loses his vote for his offense. In that respect it would be different from a case like the present. But in this respect they agree, that in each the ballots show that there was a voter present who attempted to vote, yet whose vote is not counted. In the one case it is rejected because he expressed his choice twice, when he had a right to express it only once; in the other it is rejected for uncertainty in failing to express any choice at all.

But the relator seeks to avoid this result by alleging that one of the three persons whose names were upon these ballots was ineligible. It is claimed, in that event, that they were effectual to elect the other two. But the allegation of his ineligibility is put in issue by the answer, by the denial of sufficient knowledge or information on the subject to form a belief; and as the question arises on demurrer to the answer, it must be now assumed that the three persons named were all eligible. And it follows that the demurrer to the answer must be overruled.

But it is still proper now to determine the effect of such ineligibility, if proved; because if we should still be of the opinion that the ballots would be void, it would be idle to send the parties to a trial of that issue.

I was at first inclined to think that, upon such proof, the ballots might be sustained and counted for the two who were eligible. But further reflection has led me to the opposite conclusion.

It cannot be assumed that, if the voter had known he could only vote for two, he would have voted for the two who were eligible. He evidently supposed the other to have been eligible also, and would have been as likely to have voted for him as for either of the others. But if he had been informed both of the ineligibility of the one, and of the fact that only two could be elected, it might not then be unreasonable to suppose that he would have voted for the two who were eligible. But to reach this conclusion two suppositions must be made, neither of which was true in fact.

But even if this difficulty should be regarded as not insurmountable, and it should be held reasonable to presume that the voter would have intended to select those who were eligible, there seems to me to be still a practical difficulty in giving effect to such ballots. If the third person voted for had been a fictitious person, and this appeared on the face of the ballot, it might be said that the canvassers could reject it, and consider the ballot as being only for the real persons whose names were on it. This might have been done, if one of the persons had been, as Lord CAMPBELL suggested in *Regina v. Coaks*, *supra*, "the man in the moon." But when three real persons, who are apparently eligible, are voted for, even though one is in fact ineligible, how are the canvassers to ascertain that fact?

It is evident that the vote cannot be counted until it is ascertained. On its face it is uncertain. It can only be rendered certain, if it all, by ascertaining and adjudging that one

of the persons is ineligible. But the canvassers have no power or authority to make such an inquiry or adjudication. So far as they are concerned, therefore, the uncertainty is incurable.

It is true, that if the question were to be first passed on by a judicial tribunal, this difficulty would not exist. But such is not the case. And although the rights involved may be drawn in controversy before such a tribunal, I suppose the inquiry is still limited to the number of votes which the canvassers were entitled to count. And if this is so, it would seem to follow necessarily that all votes which the canvassers could not count, by reason of incurable uncertainty, so far as they were concerned, must also be rejected in a judicial inquiry. For this reason, it seems to me that even though it should be proved that one of these persons was ineligible, these ballots would still remain void for uncertainty. The defendant, therefore, was duly elected, and the demurrer should be overruled.

*By the Court.*—Demurrer overruled.