Richard BENDER, Arvilla Bender, FB & Company, LLP, and Dale Howard, Petitioners-Respondents-Cross-Appellants,

v.

TOWN OF KRONENWETTER, Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 02–0403. Submitted on briefs August 23, 2002.—Decided October 1, 2002.*

2002 WI App 284

(Also reported in 654 N.W.2d 57.)

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Russell W. Wilson* and *Julie M. Falk* of *Ruder, Ware & Michler*, Wausau.

On behalf of the petitioners-respondents-cross-appellants, the cause was submitted on the briefs of *Gary R. McCartan* of *McCartan Law Firm, S.C.*, Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The town of Kronenwetter appeals a decision that (1) the town's litigation costs could not be included in a special assessment levy; and (2) the special assessment of Dale Howard's property is reasonable as it pertains to water, but not as it pertains to sewer. The town argues that the litigation costs should be included in the special assessment and that Howard's property was reasonably assessed for both sewer and water.

¶ 2. Richard Bender, Arvilla Bender, F.B. & Company, LLP, and Dale Howard ("the Bender Group") cross-appeal the circuit court's order that Dale Howard's property consists of two parcels for special assessment purposes, the order denying the Bender Group's petition to amend their notice of appeal, and the order granting the town's summary judgment motion on all contractual and equitable theories of law. The Bender Group argues that (1) they are entitled to a jury trial on claims of fraud and breach of contract; (2) the town is bound by an oral contract between the Bender Group and the town's engineer; (3) their fraud claim should not have been dismissed; (4) Howard's parcel was exempt from the special assessment as "eligible farm land;" (5) the Bender Group has a right to amend their notice of appeal to the circuit court; (6) the town is estopped from denying the oral contract; and (7) the special assessment is unreasonable. We affirm the circuit court's orders in all respects except as regards the Howard property assessment, which we conclude is "eligible farmland."

## BACKGROUND

¶ 3. This case focuses on an extension of sewer and water lines along a county highway beside the Bender Group's properties. When the extension was first discussed in October 1998, the Bender Group indicated to the town board it would not be interested in the extension if the town would impose a special assessment against its properties.

¶ 4. At a town board meeting on May 20, 1999, the town decided that a plan for sewer and water was needed to service two new subdivisions. The board approved the extension on July 12, 1999, deciding to install it along County Highway X. The board agreed to

a special assessment based on the same methodology it had used on a previous project.

¶ 5. On August 3, 1999, the town board contracted with Schneider Consultants, Inc., to install the sewer and water extension. The board authorized Richard Schneider, the town engineer, to engage in discussions with Felix Bender regarding an easement on his property. However, the board decided not to offer any compensation in exchange for easements.

¶ 6. On August 23, 1999, the town board approved a resolution to install sewer and water along County Highway X from County Highway XX to Pleasant Drive. Richard Schneider indicated to the board that the Bender Group would voluntarily convey an easement. Schneider did not inform the board of any plan to defer the special assessments in exchange for the easements. However, the Bender Group maintains that Schneider promised Richard Bender an exemption from the special assessment. Additionally, Felix Bender claims Schneider told him that the Bender Group would not be charged for sewer and water until they tapped into it. The Bender Group never confirmed any of this with the town board.

¶ 7. On September 28, 1999, the town had a public hearing on the proposed assessments. It was at this time that the Bender Group first raised its allegations that they were to be exempt from the assessment. As a result of this and other complaints, the board voted on October 6, 1999, to cancel the project. However, on October 25, 1999, the board reversed its position and decided to go ahead with the project. Another public hearing was held on November 29, 1999, at which time the Bender Group presented arguments attacking the reasonableness of the special assessment. Specifically, they argued that landowners who did not want sewer

and water would have to pay for it, while only one landowner would benefit. They made no mention at this time of Schneider's promise of an exemption or deferral of the assessment.

¶ 8. The town adopted a resolution on December 6, 1999, to go ahead with the project and approved the engineer's report, finding the special assessments to be reasonable. The town board never approved any agreement between Schneider and the Bender Group regarding an exemption or deferral.

¶ 9. The Bender Group appealed to the circuit court, requesting a jury trial on its claims of fraud and breach of contract. It also argued that the Howard property was exempt from the assessment because it was "eligible farmland," that the Benders were exempt by contract, and that the special assessment was unreasonable.

¶ 10. On May 18, 2000, the circuit court denied the Bender Group's motion for a jury trial. Then, on September 20, 2000, the court granted partial summary judgment to the town and dismissed the Bender Group's allegations regarding breach of contract and fraud, holding that the town was not bound by Schneider's alleged agreement to defer or exempt the special assessment.

¶ 11. On January 3, 2001, the circuit court held that the Howard property consisted of two parcels, one of which did not quality as "eligible farmland," and that the Benders would not be allowed to amend their notice of appeal. The court granted the town's motion for summary judgment on all contractual and equitable theories.

¶ 12. On September 14, 2001, the circuit court ordered that the town's litigation costs were not reasonably related to the sewer and water improvement.

Therefore, these costs could not be added to the special assessment. Additionally, the court held that the town's decision to assess only those properties with a direct benefit was reasonable. Finally, the court held that the assessment of the Howard property for water was reasonable, while the assessment for sewer was not.

## DISCUSSION

I. Cost of Litigation

¶ 13. The first issue is whether the town is entitled to add its legal expenses associated with this litigation to the special assessment levy, which it argues is permitted by Wis. Stat. § 66.60(5).[1] The interpretation of a statute and its application to a set of facts are questions of law we review independently. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* at 365.

¶ 14. Wisconsin Stat. § 66.60(1)(a)[2] authorizes a municipality to levy and collect special assessments "for special benefits conferred upon such property by any municipal work or improvement . . . ." Additionally, the municipality "may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of such special assessments." *Id.* Thus, only

---

[1] Wisconsin Stat. § 66.60(5) (1997–98). All references to the Wisconsin Statutes are to the 1997–1998 version unless otherwise noted. This section has been renumbered as § 66.0703(2) (1999–2000). All 1997–98 statutes cited in this opinion have been amended or renumbered by 1999 Act 150 §§ 525–537, eff. Jan. 1, 2001. Their substance has not changed as they are applied in this opinion.

[2] Renumbered as Wis. Stat. § 66.0703(1)(a) (1999–2000).

the cost of a "work or improvement" conferring a "special benefit" may be assessed against a property.

¶ 15. WISCONSIN STAT. § 66.60(5) allows a municipality to add to the special assessment "the cost of any architectural, engineering and legal services, and any other item of direct or indirect cost which may reasonably be attributed to the proposed work or improvement." The town claims that the use of the word "any" gives the statute a broad interpretation. However, the Bender Group argues a narrower construction because of the statute's requirement that the cost must be reasonably attributed to the work or improvement. The Bender Group argues that there is a distinction between litigation costs that are associated with the work or improvement and those associated with an appeal of a special assessment.

¶ 16. As the circuit court noted, although "the use of the terms 'any' and 'indirect' in the statute indicate the broad nature of it . . . the term 'reasonable' provides some limitation [which] prohibits the town from adding its additional costs to the assessment." We agree. The legal expenses the town is seeking to add to the assessment are not reasonably attributed to the work or improvement. They do not aid in its creation or development, but arise after completion of the engineering report and after the municipality has published its final resolution. They are instead attributed to an appeal from the special assessment. While the town would be entitled to legal costs for establishing the project, the statute does not allow for the addition of legal expenses that are speculative and uncertain, and merely the result of a legal challenge. We therefore affirm the circuit court's decision not to allow the inclusion of litigation costs.

## II. Right to a Jury Trial

¶ 17. The Bender Group argues that it is entitled to a jury trial. It does not claim that this right stems from the appeal of the special assessment itself, but because it raises issues of fraud and breach of contract. The Wisconsin Constitution guarantees the right to a jury trial. WIS. CONST. art. I, §§ 5 and 7. However, this right attaches only to actions at law that were "known to the common law in 1848 . . . ." *State v. Ameritech Corp.*, 185 Wis. 2d 686, 698, 517 N.W.2d 705 (Ct. App. 1994). The right to a jury trial "does not extend to 'equity cases, in which the party has never been held entitled to a jury trial as a matter of right.' " *Spensley Feeds v. Livingston Feed & Lumber*, 128 Wis. 2d 279, 288, 381 N.W.2d 601 (Ct. App. 1985) (quoting *Stilwell v. Kellogg*, 14 Wis. 499, 503 (1861)). Whether the Bender Group's constitutional and statutory right to a jury trial was violated is a question of law that we review independently of the trial court. *See Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 591, 527 N.W.2d 301 (1995).

¶ 18. Claims for fraud and breach of contract are indeed actions at law, which carry a right to a jury trial. *See, e.g, Becker v. Holm*, 89 Wis. 86, 90–91, 61 N.W. 307 (1894); *Lombard v. Cowham*, 34 Wis. 486, 492 (1874). In this case, however, the Bender Group is simply challenging the special assessment. They have not actually filed any claims for fraud or breach of contract requesting monetary damages. Instead, they have asked to have the assessment voided, in part, because of conduct they allege amounts to fraud and breach of contract. They are seeking equitable relief and are

therefore not entitled to a jury trial. Consequently, we affirm the circuit court's order denying a jury trial.

### III. Oral Contract Between Schneider and the Bender Group

¶ 19. The Bender Group argues that the town is bound by an oral contract entered into with Schneider deferring or exempting them from the assessment. The trial court granted the town's motion for summary judgment on this issue, holding that Schneider had no authority to bind the town to such an agreement.

¶ 20. We review a grant of summary judgment independently, using the same methodology as the circuit court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995). "[I]f a genuine dispute of material fact exists or if the evidence presented is subject to conflicting inferences or factual interpretations, summary judgment must be denied." *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 362, 591 N.W.2d 619 (Ct. App. 1999).

¶ 21. The Bender Group cites WIS. STAT. 66.605(1),[3] which states that a town may defer special assessments "on such terms and in such manner as **prescribed** by its governing body . . . ." (Emphasis added.) They note that BLACK'S LAW DICTIONARY 1183 (6th ed. 1991), defines "prescribe" as "To lay down authori-

---

[3] Renumbered and amended as WIS. STAT. § 66.0715(2) (1999–2000). WISCONSIN STAT. § 66.605 (1997–98) states in part:

Notwithstanding any other statute, the due date of any special assessment levied against property abutting on or benefited by a public improvement may be deferred on such terms and in such manner as prescribed by its governing body while no use of the improvement is made in connection with the property.

tatively as a guide, direction, or rule; to impose as a peremptory order; to dictate; to point; to direct; to give as a guide, direction, or rule of action; to give law. To direct, define, mark out." The Bender Group then argues that "prescribe" is a broad term that does not specifically require adoption of a formal resolution. Because the town gave Schneider authority to negotiate and draft easements on behalf of the town, the Bender Group argues that he also had the authority to bind the town to any contracts he made. As a result, they argue that summary judgment was inappropriate because a reasonable person could infer from the facts that Schneider was authorized to bargain with the Bender Group regarding the easement.

¶ 22. The town, however, notes that a deferral can only be granted according to statute, and claims that the word "prescribe" in WIS. STAT. § 66.605 is defined as "to write beforehand; to set down as a rule or direction; order." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1065 (3rd ed. 1996). As a result, the town argues that Schneider is unable to bind the town to a deferral because this method of obtaining a deferral was not "prescribed" by the board and is therefore not in compliance with the statute.

¶ 23. We conclude that it is immaterial whether "prescribe" is broadly or narrowly defined or whether the town must formally or informally provide for the manner in which it will authorize others to bind it. Under any interpretation, the Bender Group has failed to show that the town prescribed for Schneider to defer assessments.

¶ 24. The Bender Group also maintains that it is entitled to an exemption. WISCONSIN STAT. § 66.605(1) only deals with deferrals, however, and the Bender

333

Group does not cite any authority allowing exemptions. Therefore, because Schneider was not authorized by statute to grant a deferral from the special assessment, the town could not be bound by the oral contract. As a result, we affirm the trial court's grant of the town's motion for summary judgment on this issue.

IV. Fraud

¶ 25. When the trial court granted the town's motion for summary judgment, it also dismissed the Bender Group's challenge to the assessment on the basis of fraud. The Bender Group argues that this was error because a reasonable person could conclude that the town board and Schneider had perpetrated a fraud on the Bender Group to obtain the easement. Again, we review a grant of summary judgment independently. *M&I First Nat'l Bank,* 195 Wis. 2d at 496–97.

¶ 26. The Bender Group points to certain statements made by town board members at the August 3, 1999, meeting that the Bender Group interprets as fraudulent. For example, the Bender Group claims that one town board member said the board should lead the Benders to believe one thing and then would "stick it to them." Further, they claim another member of the board stated that if the Board was ever questioned about any negotiations, it would simply indicate that "nobody ever talked to us about it." The Bender Group claims that these statements indicate the Board's plan to fraudulently obtain the easement.

¶ 27. In order to prove fraud, the Bender Group must show:

> First, there must be a knowingly false representation of fact. Second, the representation must be made with intent to defraud and for the purpose of inducing another to act upon it. Third, the other person must

334

rely on the representation and be induced by it to act, causing his or her own injury or damage. The actor's reliance on the representation must be justifiable. Finally, "[t]he party alleging the fraud has the burden of proving the elements by clear and convincing evidence."

*Korhumel Steel Corp. v. Wandler*, 229 Wis. 2d 395, 403, 600 N.W.2d 592 (Ct. App. 1999) (citations omitted).

¶ 28. The statements the Bender Group cites are taken out of context and are not evidence of fraud. The statement that the board would "stick it to" the Bender Group appears to mean that the Bender Group would be stuck with the assessment along with other property owners in the area. This statement does not show any intent to defraud.

¶ 29. Similarly, the statement that the board could simply say that "nobody ever talked to us about it" is taken out of context. The entire statement was: "What I do like about that is, I mean, you can say, and it's perfectly true, [Schneider doesn't] have the final say. You're just talking options, and it also protects–[Unintelligible]–the allegation that nobody ever talked to us about it." This statement also is inconsistent with fraudulent conduct. It is a statement acknowledging the fact that Schneider can engage in discussions with the Bender Group, but that his discussions would not be "the final say."

¶ 30. The result of the August 3 meeting was that the board decided it would not offer the Bender Group any compensation for an easement. There is no indication, however, that the board intended to obtain the easement by fraud, and therefore no issue of material fact exists that would render summary judgment appropriate.

## V. Howard's Parcel

¶ 31. Howard contends that his property, a tree farm, is exempt from the special assessment because it is "eligible farmland" under Wis. Stat. § 66.60(6m). The trial court determined that his 62.6 acres should be treated as two parcels, one 38.7 acres and another 23.9 acres. Because the statute only exempts parcels of thirty-five acres or more, only the 38.7–acre parcel was exempt from the special assessment. Howard argues that his land should be considered one parcel and therefore the entire 62.6 acres should be exempt. We agree.

¶ 32. Statutory interpretation and its application to the facts are questions of law we review independently to discern the intent of the legislature. *Reyes*, 227 Wis. 2d at 364–65. We first look at the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986).

¶ 33. Wisconsin Stat. 66.60(6m)(a)2 states:

> "Eligible farmland" means **a parcel** of 35 or more acres of contiguous land which is devoted exclusively to agricultural use which during the year preceding the year in which the land is subject to a special assessment under this section produced gross farm profits, as defined in s. 71.58(4), of not less than $6,000 or which, during the 3 years preceding the year in which the land is subject to a special assessment under this section, produced gross farm profits, as defined in s. 71.58(4), of not less than $18,000. (Emphasis added.)

The key issue is the meaning of "a parcel." The trial court defined "parcel" based on Wis. Adm. Code § Tax 18.05, which states a parcel is "land, contained within a

336

single legal description." The town argues that this is the correct definition because a special assessment is in the nature of taxation. Therefore, the statute should be read in conjunction with the taxing code. The Howard property is treated as two separate parcels for tax purposes. Under this definition, the 23.9–acre property is not exempt from the special assessment.

¶ 34. Howard contends, however, that it was error to use the tax code definition of a parcel. In fact, WIS. STAT. § 66.60(6m)(a)2 defines "eligible farmland" as "a parcel of 35 or more acres of contiguous land." It makes no reference to any special meaning of "parcel." Therefore, we should use the plain meaning of the word "parcel," which is "a tract of land." BLACK'S, *supra* 1137. This suggests that any contiguous portion of land greater than thirty-five acres would constitute "eligible farmland," regardless of the number of parcels into which it might be divided for tax purposes. We agree. The statute's requirement that land be greater than thirty-five acres is not dependent on how land is allocated in a property tax bill. We therefore conclude that Howard's property is one parcel under § 66.60(6m)(a)2.

¶ 35. The town also appeals the circuit court's decision that the Howard property was reasonably assessed as to water, but not as to sewer. However, because we later hold that the Howard property is exempt from the special assessment as "eligible farmland," we need not decide this issue.

VI. Right to Amend Notice of Appeal

¶ 36. The Bender Group argues that they had a statutory right to amend their notice of appeal to allege that Schneider promised a deferral of the special assessment. Initially, the Bender Group's notice of appeal

337

asserted that Schneider promised them an exemption from the special assessment in exchange for the easement. After the circuit court held that the town had no authority to exempt property owners from special assessments, the Bender Group sought to amend their notice to allege that Schneider promised deferments.

¶ 37. The trial court did not decide this issue, however, because it held that Schneider, as town engineer, lacked the authority to bind the town to an exemption or deferral. Because we note in sections III and VII of this opinion that Schneider did not have the authority to bind the town, we also need not address this issue.

### VII. Estoppel from Denying the Oral Contract

¶ 38. The Bender Group argues that the town should be estopped from denying the oral contract between Schneider and the Bender Group for a deferral or exemption of the special assessment. They claim that the court should have balanced the injustice to the Bender Group by not applying the estoppel doctrine, and the harm to the public interest by applying the doctrine. *See Beane v. City of Sturgeon Bay,* 112 Wis. 2d 609, 620–21, 334 N.W.2d 235 (1983). We review a grant of summary judgment independently. *M&I First Nat'l Bank,* 195 Wis. 2d at 496–97.

¶ 39. It is generally held that a municipality may not be estopped from denying the validity of a contract which is not within the power of the municipality to make. *Village of McFarland v. Town Of Dunn,* 82 Wis. 2d 469, 474, 263 N.W.2d 167 (1978). Furthermore, "estoppel cannot make enforceable a municipal contract

338

which is not executed in compliance with the mandatory or prohibitive conditions expressly prescribed by statute . . . ." *Id.*

¶ 40. A special assessment can only be levied by a resolution of the town board, and can only be deferred by the governing body. WIS. STAT. § 66.60. As we have already recognized, because Schneider is merely the town engineer, he is not authorized to defer the special assessment. Thus, any claimed contract was either not within the town's power or was not executed as required by statute.

¶ 41. Additionally, estoppel does not apply against a municipality that is exercising its police powers. *City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76, 142 N.W.2d 169 (1966). Here, the special assessment was levied by the town pursuant to its police powers for the safety and welfare of its citizens. As a result, an unauthorized oral contract between Schneider and the Bender Group cannot be the basis to estop the town from denying the contract.

VIII. Reasonableness of the Special Assessment

¶ 42. Finally, the Bender Group contends that the entire special assessment is unreasonable in its methodology, allocation and result. The trial court held that the town's decision to assess only those property owners with a direct benefit was reasonable, and we agree.

¶ 43. WISCONSIN STAT. § 66.60(1)(b)[4] requires special assessments made under a municipality's police

---

[4] Renumbered as WIS. STAT. § 66.0703(1)(b) (1999–2000).

power to be made upon a "reasonable basis." Whether an assessment fulfills the legal standard of reasonableness is a question of law, which we review independently. *Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 281–82, 522 N.W.2d 277 (Ct. App. 1994). However, we review any factual determinations made by the trial court in the course of reaching its reasonableness determination under the clearly erroneous standard. WIS. STAT. § 805.17(2); *Lac La Bell Golf Club*, 187 Wis. 2d at 281–82.

¶ 44. The Bender Group argues that the assessment was unreasonable because some property owners with "direct access" will incur more expense and more difficulty connecting to the sewer than those who have "indirect access."[5] The Bender Group contends that even though they are deemed to have "direct access," they would have to construct internal streets, sewer and water systems, and roadways. As a result, they argue that the distinction between "direct" and "indirect" access is illusory, arbitrary and capricious and therefore unreasonable.

¶ 45. If a special assessment is uniformly applied, it is deemed to be reasonable. *Id.* at 285–86. Here, the record demonstrates that the assessment was done according to a consistent, accepted method (the acreage methodology). In fact, this method was used in prior sewer and water projects in the town. Additionally, the

---

[5] According to Schneider's affidavit, properties having indirect access "(a) cannot connect directly and immediately by means of laterals to the assessed project because those properties do not have frontage on the assessed water mains and sewer interceptors, but (b) could eventually connect after future development occurs by means of construction of extensions to the water mains and sewer interceptors."

340

town applied the assessment according to the location of each property and whether it would be directly benefited. The Benders can, if they wish, directly and immediately connect to sewer and water, while those with "indirect" access cannot. We conclude the assessment was imposed on a reasonable basis.

## CONCLUSION

¶ 46. We reverse the trial court on the issue of the Howard property, which we hold to be "eligible farmland" and therefore exempt from the special assessment. In all other respects, we affirm the trial court.

*By the Court.*—Judgment and orders affirmed in part and reversed in part. No costs awarded on appeal.