### Calvin Copeland *versus* Daniel Hall.

Whether certain words, spoken by the mortgagee to the mortgagor of personal property, conveyed authority to sell the property, is a question for the jury and not for the Court; and where the jury were instructed that if the words used were " sell the horse and pay me," the power to sell was given, it was held to be erroneous, it being the province of the jury to find not only the words used, but the meaning of them.

The words used were but evidence. Whether that evidence proved the authorization, was a question, not of law for the Court, but of fact for the jury.

Replevin for a horse. Verdict for defendant. Exceptions filed by plaintiff.

Tenney J. — In support of the action, a writing was introduced signed by S. L. Megquier, dated Nov. 18, 1841, by which it appears that he received of the plaintiff, two horses,

that were to be returned the following June, and payment made for their services. It was in proof that at the same time there was a parol agreement that upon the payment of the price stipulated, Megquier was to become the owner of the horses. Subsequently the plaintiff received one of the horses at a certain price, fifteen dollars in money and a set of double harnesses, so that the sum to be paid for the other horse was reduced to $22,50. Megquier wished the plaintiff to take back the other horse, at such a price as he chose to allow, saying he had nothing for him to do, and wished to get rid of him in some way ; thereupon the plaintiff replied, " well, sell him and pay me." According to the testimony of another witness who was present at the same conversation, upon the plaintiff's declining to take the horse, Megquier said he wanted him to take another set of harnesses, in payment of what was due for the horse, take him back or relinquish his claim and give him liberty to sell the horse, to which the plaintiff answered, " pay me, and you can sell the horse." Upon the continued urgency of Megquier, that the plaintiff would permit him to sell the horse, the plaintiff said, " you can sell the horse, pay me, and I guess there will be no trouble." The deposition of Megquier, substantially confirms the testimony last referred to. The defendant purchased the horse, which is the one replevied, of Megquier, for the sum of $50.

Exceptions were taken to the instructions given by the Judge to the jury, that it was for them to determine what language and words were used by the plaintiff; that the words " pay me and sell the horse," would not imply an authority to sell the horse, but if the words were, " sell the horse and pay me," that they would authorize Megquier to sell the horse ; if the words were " sell the horse and pay me and there will be no trouble," they amounted to an authority to sell the horse ; and that the last clause, " and there will be no trouble," did not alter the sense, and made no difference in the effect of the words.

In order to substantiate every charge or claim, it is essential that the jury should find some predicament or state of facts, and the Court should adjudge such special modes or facts so

Copeland v. Hall.

found to be sufficient in law to sustain the charge or claim. And the Court in their instructions, must inform the jury hypothetically, that if they find the facts in one mode, the claim is supported; or the jury must find those predicaments or modes specially, and then the Court can afterwards apply the law, and pronounce whether the facts proved, be or be not such as satisfy the general and defined essentials to the charge or claim." " But if the jury were to find *mere evidence*, however cogent, in its nature, of any of the essential facts, the Court could not draw the conclusion." " In the case of a charge of larceny, if the jury were to find, that immediately after the goods were missed, the prisoner was seized in the act of absconding with the goods, and that he confessed that he was guilty, this might be abundant evidence to prove his guilt, but would be mere evidence, and the Court could pronounce no judgment." Stark. Ev. 407, 408, 409, and note, (n.) In *Harwood* v. *Goodright*, Cowper, 89, the jury found, that after the will had been executed by a testator, in favor of the plaintiff, he executed another will, the contents of which were not known, and it was contended by the heir at law, that this amounted to a revocation. Lord Mansfield remarked, " In considering the special verdict, the duty of the Court is, to draw a conclusion of law from the facts found by the jury, for the Court cannot presume any fact from the evidence stated. Presumption indeed is one ground of evidence, but the Court cannot presume any fact.

It often happens, in conversation and in parol contracts, that the meaning of the parties may be understood, and is in fact intended to be very different from the literal import of the words employed. What may have been said before or after, the use of figurative expressions, emphasis upon particular words or sentences, reference to other matters, not fully expressed, but well understood by all in hearing, and many other circumstances, are material elements, and often have a controlling influence, in acertaining the intention of those whose language is reported. Important contracts are made verbally, in terms not well suited to express the design of the parties, if

they were used in a written instrument, but are understood by them and others with the utmost precision. Actions of slander are maintained upon words, which taken literally indicate no unworthy motive, or conduct. In cases, where such evidence is adduced in support of the affirmative or negative, of any proposition presented to a jury, it is their province to determine its meaning. To find what the language was, is nothing more, than to find the evidence, which they adjudge to be true; the result of that as a fact, it is their duty to find, and the Court cannot direct what it shall be; and if the jury omit to find the fact, which is involved in the issue, the Court have no power to infer it.

In the case at bar, the propositions of the defendant were, that he purchased the horse of Megquier, and that he was authorized by the plaintiff to sell him; the latter proposition the plaintiff denied; and upon this issue of fact, the verdict was to be rendered. It was the business of the jury to find not merely what the evidence was, or what portion they believed, upon that point, but from all the evidence in the case, whether such authority was in fact given. The witnesses did not agree in their testimony touching the language used by the plaintiff, when Megquier requested his permission to sell the horse. In the instructions, the jury were left free to find, what the language was, but they were restrained from an exercise of their own judgment, by a construction of the language by the Court, which precluded them from finding the meaning of that language, under all the evidence in the case. They were permitted only to determine what were the terms used; and if they found them as the witnesses for the defendant had testified, they were required by a rule of law to find that the authority was given. In this we think the instructions were erroneous. *Exceptions sustained.*

*Appleton & Knowles,* for the plaintiff.

*A. W. Paine,* for defendant.