## Case No. 3,835.

### DETROIT STOVE WORKS v. PERRY.

[20 Alb. Law J. 10; 8 Reporter, 327.][1]

Circuit Court, E. D. Michigan. 1879.

CONSTRUCTION OF ORAL CONTRACTS—PROVINCE OF COURT AND JURY.

[1. The correct rule to be extracted from the cases in relation to the construction of oral contracts is this: If there be any conflict as to the words used, or if the words themselves be ambiguous, the question of intent should be left for the jury. But if the words are clear and explicit, and the only difficulty is in the proper legal inference to be drawn from them, it belongs to the court to give them their proper construction.]

[2. Plaintiff and defendant, being adversely interested in a patent suit, agreed that each should furnish to the other six copies of his printed testimony. Afterwards, defendant asked plaintiff's attorney to oblige him by ordering 30 copies more for him, to which the attorney replied, "Certainly." Defendant had previously consulted the printer, who said that he would charge eight cents per page, and five cents per copy for stitching, for extra copies. Defendant, having concluded that he wanted 40 copies, obtained the following order from plaintiff's attorney to the printer: "Mr. P. (defendant) says he gave you an order for 30 copies. We ordered 100. He now says he wishes 40; will be content with 90, so we have nothing to do with his order for 30, and have no objection to his having 40 on like terms." Held, that as plaintiff, in agreeing to give defendant the six copies, had already donated the original cost of the composition, it was clear, as matter of law, that the agreement was that defendant should have the extra copies merely for their extra cost. and he was not liable to pay a ratable proportion of the cost of the entire edition, including the composition.]

[3. Defendant was not obliged to accept a tender of the extra copies, when accompanied with a demand for the proportionate price of the whole edition, and, having refused to accept them, was not bound to pay anything to plaintiff.]

On motion for a new trial. This was an action of assumpsit to recover of the defendant the price of thirty printed copies of testimony taken on behalf of the plaintiff in a certain patent suit pending before the patent office at Washington. The plaintiff's

[1] [8 Reporter, 327, contains only a partial report.]

testimony tended to show that the plaintiff and defendant were interested adversely to each other in this suit; that defendant came to Detroit to attend the taking of this testimony of plaintiff's witnesses; that it was agreed between them that each should furnish to the other six printed copies of their testimony; that three or four days after they had commenced taking testimony here, and about the 24th of September, 1874, defendant, desiring some extra copies of the plaintiff's testimony for circulation, went to the office of Col. Sprague, plaintiff's attorney, accompanied by his agent, one Liddell, and asked Col. Sprague how many copies of his testimony he was going to print; that Sprague replied that he thought they were going to print about one hundred, and that Mr. Perry, the defendant, then asked him to oblige him by ordering thirty copies for him, to which Col. Sprague replied, "Certainly." That was all the conversation in the case. It seems that Liddell, defendant's agent, had been to the office of the Free Press and asked the printer what he would furnish thirty copies for, to which he replied eight cents per page, and five cents per copy for stitching. Afterward defendant concluded that he wanted forty copies, and obtained a letter from Mr. Sprague to the printer, of which the following is a copy: "Detroit, October 21st, 1874. Friend Eby:—Mr. Perry says he gave you an order for thirty copies. We ordered one hundred. He now says he wishes forty; we will be content with ninety, so we have nothing to do with this order for thirty, and have no objection to his having forty upon like terms. Yours, Sprague." Further testimony was offered tending to show that subsequently an agent of the plaintiff's called upon the defendant at his hotel and presented him a bill for thirty copies of the testimony at $35 each, amounting to $1,050, being the proportion which the thirty copies bore to the entire edition, which defendant refused to pay. There was no evidence that he received the thirty copies or that they were ever tendered to him. Upon this testimony the court charged the jury that the plaintiff was not entitled to recover, and directed a verdict for the defendant. Plaintiff moved for a new trial.

G. V. N. Lothrop, for plaintiff.
Alfred Russell, for defendant.

BROWN, District Judge. This motion raises the following questions: 1. Whether under the order, as stated by the plaintiff's witnesses, the plaintiff was entitled to recover the proportionate price which the thirty copies bore to the entire edition of 130 copies, or simply the extra cost of thirty copies. 2. Whether the intent of the parties to be gathered from this conversation and the other circumstances should have been submitted to the jury as a question of fact.

I have no doubt that if articles are manufactured separately, and without the use of a factor or instrument common to all, the cost of one being equal to every other, the instruction asked for would have been correct, and the plaintiff would have been entitled to recover the proportion which the thirty copies bore to the entire edition. So, too, if an edition of a certain work were published for sale, an agreement to sell at cost a part of such edition would imply an obligation to pay the proportionate amount of the cost of the composition as well as the press-work and paper; but where, as in this case, the composition had already been ordered by the plaintiff for its own use, and by a previous understanding the defendant was to have the benefit of such composition gratuitously in the six copies which each should furnish the other, I think it quite clear the same rule should not apply. In other words, the plaintiff having already incurred the expense of composition, and having agreed to let the defendant have the benefit of that expense (for he could not carry out his contract to give the six copies without incurring it), it can make no further claim for the same by reason of the thirty copies, and could therefore only recover for the extra expense of those copies, namely, the press-work and paper. Suppose, for instance, that A. and B. had agreed to exchange photographs with each other, the cost of the first picture being five dollars, and that of each subsequent one one dollar. A. then requests B. to give him a dozen extra copies for his own use. It seems to me entirely clear that B. would not be entitled to charge him any portion of the price paid for the negative or first copy since he had already agreed to give him that and could only charge for the extra price of the twelve copies. The case differs from this only in the fact that the composition of a book bears a much larger proportion to the cost of the press-work and copy.

2. Should the import of this contract have been left to the jury as a question of fact or disposed of by the court as a legal proposition? In discussing this the following propositions may be considered as settled beyond dispute: 1. That before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge; not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Commissioners v. Clark, 94 U. S. 278, 284. 2. That the construction of written contracts is for the court, except where the same is rendered ambiguous by the facts and circumstances surrounding the transaction. How far the intent of the parties to be gathered from the terms of an oral contract is a question for the jury is not definitely settled. In principle it would seem that if there be no dispute as to the words used, and no facts surrounding the transaction calculated to throw doubt upon the intent of the parties, or the meaning in which

they use the words, there is no more reason for submitting the case to the jury than if the contract was in writing. Short v. Woodward, 13 Gray, 86. It certainly cannot be true that oral contracts must always be left to the jury, for example, if, upon the sale of a horse, the vendor should say, "I know this horse to be sound, and warrant him to be so," and nothing else was said, it would not be error to instruct the jury that these words constituted a warranty. But if upon the other hand he should say, "I believe this horse to be sound, but will not warrant him to be so," it would certainly not be contended that the court would be at liberty to leave this to the jury as evidence from which they might properly find a warranty. Of course, if there is a dispute as to the actual conversation, or the words used are ambiguous in themselves, or the contract is to be gathered from a series of conversations and circumstances, the jury must determine the intent of the parties. Thus, where the vendor of a cow assured the purchaser "she was all right," it was held that it was properly left to the jury to decide whether the words were intended as a warranty of soundness. Tuttle v. Brown, 4 Gray, 457.

The counsel for the plaintiff in this case insists that, where the words used do not extend to the whole contract, it must be left to the jury to determine what was the intention of the parties, and that, as nothing was said in this conversation as to the price or payment, it should be left to the jury to ascertain what, under all the circumstances of the case, should have been paid. There are cases which seem to support this theory, or which at least go to the extent of holding that the construction of all oral contracts should be left to the jury. But the authorities are by no means in harmony. In Copeland v. Hall, 29 Me. 93, the jury were left free to find what the language of the contract was, but they were restrained from the exercise of their own judgment, by a construction of the language by the court, which precluded them from finding the meaning of that language under all the evidence in the case. This was held to be error; it was said the whole contract should have been left to the jury to determine for themselves the proper construction to be given to it. This case seems to be in conflict with that of Curtis v. Martz, 14 Mich. 507–513, where it was said the jury should have been told in substance what would be the proper construction of the mortgages upon the different state of facts which might be found by them. So, in Herbert v. Ford, 33 Me. 90, it was said, "The jury had the right to determine the existence of the parol contract, its extent and limitations; they are to find not only what language is used, but its purport and meaning. In cases of written contracts, it is the duty of the court to define the meaning of the language used

in them. But in verbal contracts such duty is confined to the jury. They are not barely to ascertain the words and forms of expression, but to interpret their sense and meaning." A like rule was made by the same court in Guptill v. Damon, 42 Me. 271. Although in this case there was a strong dissenting opinion, in Kuns' Ex'r v. Young, 34 Pa. St. 60, it was said that the evidence of a promise to pay the debt of another must be clear, explicit, and certain; that whether it be so or not is a question of fact for the jury. In Tobin v. Gregg, Id. 446, the promise rested in parol proof, and that of the most unsatisfactory sort,—the confessions and casual declarations of the defendant, made to third parties, who had no interest that entitled them to full explanation, or stimulated them to understand and remember exactly what was meant. It was held, and there can be no doubt of the propriety of the ruling, that the testimony should be referred, in connection with the proofs upon the other side, to the jury, to find whether the promise declared on had indeed been made. So, in Judge v. Leclaire, 31 Mo. 127, the law was assumed to be well settled that, where the terms of a contract are to be ascertained from the oral evidence of witnesses, it is the province of the jury to determine from the evidence what is the contract; Citing Islay v. Stewart, 4 Dev. & B. 160, in which it was said that, where the controversy in a cause turns upon the meaning of the parties to a verbal agreement in relation to a matter upon which there is room for dispute, it is proper for the judge to leave it to the jury, as a question of fact, to ascertain what was the agreement of the parties in relation to such matter. Opposed to this current of authority, however, are the decisions in Massachusetts and several other states. In Rice v. Dwight Manuf'g Co., 2 Cush. 80, it is said that the same rule of construction is applicable to parol as to written contracts. "The language used by parties while contracting may be proved, and, when proved, is to be taken in its usual and ordinary acceptation, and however difficult it may be, and frequently is, to put a just construction upon it, still that duty devolves upon the court. The jury are to find whether or not the language was used, the court are to instruct the jury as to its legal effect, if used." A like ruling was made in Pratt v. Langdon, 12 Allen, 544, and in Globe Works v. Wright, 106 Mass. 207–216. So, in Folsom v. Plummer, 43 N. H. 469–472, it was said to be competent for the court in its discretion, where a contract is merely verbal, and there is doubt as to the precise language used, or as to the understanding of the parties, to leave it to the jury to judge what is proved, and what language was used, and how it was to be understood, subject to proper instructions as to the legal effect of such contract as they may find to

have been made; and in Smalley v. Hendrickson, 29 N. J. Law, 371, it was said that where the existence and terms of a parol contract were established the construction is a matter of law for the court. See, also, Kingsbury v. Buchanan, 11 Iowa, 387–395; Dudgeon v. Haggart, 17 Mich. 279.

I think the correct rule to be extracted from the cases is this: If there be any conflict as to the words used, or if the words themselves be ambiguous, the question of intent should be left to the jury. But if the words are clear and explicit, and the only difficulty is in the proper legal inference to be drawn from them, it belongs to the court to give them their proper construction. The fact that in this case one of the terms of the contract, namely, the price to be paid, was omitted, does not render it necessary that the construction of the contract should be left to the jury, if the circumstances surrounding the transaction leave no doubt as to the legal inference to be drawn from the conversation. It is true, as suggested by plaintiff's counsel, that the order in this case, standing alone, was consistent either with a gift to the defendant with an intent to charge him a proportionate price on the cost of the whole edition, or with an intent to charge him only with the cost of the extra copies. It is not suggested by either party that a gift was intended. I have already stated the reasons which lead me to hold that, as the plaintiff had already agreed to furnish the defendant the cost of composition in the six copies, it could not charge him the proportionate price of the whole edition. The evidence upon this point is to my mind so decisive, that if the jury should find such to be the intent of the parties, I should feel compelled to set aside the verdict. Under the view I take of the plaintiff's case, it could only be entitled to recover for the extra cost of the thirty copies, and as these copies were never received by the defendant, or tendered by the plaintiff, or, if such tender were ever made, it was accompanied by a demand for the proportionate price of the whole edition, I think the plaintiff is not entitled to recover. Of course, if the defendant received the thirty copies, he would be bound to pay the cost of them. But if they were tendered to him with a demand for the proportionate price of the whole edition, he would not be bound to receive them, and could not be held liable to pay anything. The motion for a new trial must therefore be denied.