BECKER, Assignee, Appellant, vs. HOLM and others, Respondents.

*November 17 — December 11, 1894.*

*Sale of chattels: Action for price: Nonsuit: Construction of contract: Court and jury: Statute of frauds: Voluntary assignment: Sale by assignee on credit.*

1. A nonsuit as to all of several defendants is erroneous if the case ought to have been submitted to the jury as to either of them.

2. An oral contract is not void because the parties used language not technically correct or exact, if they understood it in a practical sense and attached to it a definite meaning; and the question as to what they understood by such language — in this case the words "bank-accepted paper," "bank acceptance," or "bank-accepted note "— is one of fact for the jury.

3. In an action against H., S., and G. for the price of a steamboat there was evidence that G., claiming to act for all, had made an oral contract for the purchase of the boat, and had hired a man to haul it out of the river and prepare it for shipment by rail; that G. and H. afterwards expressed satisfaction with the boat and with the manner in which the man had done said work; that said man was paid by H., who also engaged him to watch the boat; and that S., in whose name a bill of sale was made out, admitted that the sale was made to him through G. as his agent. *Held*, that it was a question of fact for the jury whether there had been such an acceptance and receipt of the boat as to take the contract out of the statute of frauds.

4. The validity of a sale made partly on credit by an assignee for the benefit of creditors cannot be questioned on that ground by the purchaser, but only by creditors.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Reversed.*

This action was brought by the plaintiff, as assignee of one Talbot in a voluntary assignment for the benefit of his creditors, to recover $2,000, the purchase price of a steamboat alleged to have been sold and delivered by the plaintiff to the defendants, *Holm, Smith,* and *Garrison,* November 18, 1892. The answers of the several defendants were, in substance, a denial of the allegations of the complaint. Upon trial before a jury, at the close of the plaintiff's testimony the court gave judgment of nonsuit against the plaintiff, from which he appealed.

It appears that the alleged sale was made by Talbot as the agent of the plaintiff for that purpose, and the correctness of the ruling of the court depends upon his testimony, which tends to show that the defendant *Garrison,* claiming to act for himself and the other defendants, November 18,

1892, made a bargain with Talbot, the plaintiff's agent, to purchase the steamboat, then in the Fox river below the bridge at Berlin, for $2,000, payable $1,000 in cash the following Tuesday or Monday, and the residue in "bank-accepted paper," "bank acceptance," or "bank-accepted note," — all of these expressions having been used by the witness,— payable September 1, 1893, with seven per cent. interest; that nothing was said as to what was meant by the expressions thus used, nor what banks should accept it, though the banks of Eau Claire were mentioned, but not any particular bank, and the note was to be delivered at Berlin; nor was anything stated as to how the bank should accept it, or that any bank was to sign or indorse it. *Garrison* represented that *Smith* did the managing for the defendants in the woods, and the defendant *Holm* was their man of means, and he (*Garrison*) was their woodsman, working on the streams and looking up timber, and that he had full authority to buy the boat. At this time he made arrangements with one Tiny Smith to take the boat up above the bridge and haul it out, preparatory to its shipment on the cars, for the sum of $80; and Talbot was to aid by giving directions, etc., but not to be to any expense. Tiny Smith procured help, hauled out the boat, and blocked it up on the bank, and prepared it for shipment, and Talbot had given him the key that was used on the lower part of the boat, and before the action was brought all the other keys, except one retained by Talbot. The defendants *Garrison* and *Holm* came to Berlin December 7th, and had an interview with Talbot, and both declared that they were satisfied with the condition of the boat, and the evidence tended to show that the parties waited there a considerable time for the plaintiff to come from Winneconne to execute a bill of sale of the boat; and in the meantime some conversation was had in respect to making a sale of the boat for cash in hand, and *Holm* made an offer of $1,500, which was refused, and noth-

ing further was said on the subject. At the time of the al-
leged agreement, *Garrison* stated the boat was to be used
for towing logs on Lake Manitowish and on the waters of
the Flambeau or Chippewa rivers, and it was to be trans-
ported on the cars. He desired time to submit the matter
to the parties at Eau Claire, and it was agreed that he was
to return and telegraph directions, and accordingly, on the
19th of the same month, he sent a telegram from Eau Claire
to Talbot, saying, "Pull out the boat." When *Garrison*
and *Holm* were at Berlin, on the 7th of December, they took
measurements of the boat and discussed the question as to
the convenience of loading it. At the request of *Holm*, Tal-
bot repeated to him the statement of the bargain made with
*Garrison.* The bill of sale was to be made to the defendant
*Smith.* This was by request of *Mr. Holm*, and it was exe-
cuted accordingly on the 8th of December, ready for de-
livery. The arrangements for the purchase of the boat were
made by *Garrison. Smith* subsequently admitted that the
agreement to buy the boat was made for him, and claimed
that the bargain was for $1,000 cash and his note for $1,000,
due the 1st of September, but that nothing was said about
there being a bank acceptance, or any indorsement. The
defendant *Holm* afterwards paid Tiny Smith the agreed
price for taking the boat out of the river and blocking it up,
and the latter claimed there was something due him for
extra work, and up to and at the time of the trial he claimed
to hold possession of the boat for the defendants and as secu-
rity for his pay.

For the appellant there was a brief by *Perry Niskern,*
attorney, and *L. A. Doolittle,* of counsel, and the cause was
argued orally by *Mr. Niskern.*

For the respondents there was a brief signed by *Wickham
& Farr,* attorneys for *Holm* and *Garrison,* and *Geo. C. &
Fred A. Teall,* attorneys for *Smith,* and oral argument by
*James Wickham.* They contended, *inter alia,* that the con-

tract was void for uncertainty. *Greve v. Ganger*, 36 Wis.
369; 1 Parsons, Cont. 475, 525; *Wittkowsky v. Wasson,* 71
N. C. 451; *Hutton v. Moore*, 26 Ark. 382; *Brown v. Cole*,
45 Iowa, 601; *Leonard v. Carter*, 16 Wis. 607; *Cole v. Clark*,
3 Pin. 303; 1 Am. & Eng. Ency. of Law, 529. " No ques-
tion affecting the interpretation of contracts can properly
be submitted to the jury, except those arising upon conflict-
ing evidence as to the terms of the agreement, or where ex-
trinsic evidence raises some doubt over the identity of the
subject matter or of the claimants thereunder." *Home Mut.
Ins. Co. v. Roe,* 71 Wis. 33, 41.

PINNEY, J. 1. We think that there was sufficient evi-
dence to require the submission of the case to the jury, cer-
tainly as to the defendants *Smith* and *Garrison*. Whether
there was sufficient evidence as against the defendant *Holm*
it is not necessary now to consider, for the nonsuit was
granted as to all the defendants and was erroneous if the
case ought to have been submitted to the jury as to either
of them. *Gerhardt v. Swaty*, 57 Wis. 24. The points prin-
cipally considered at the argument were: (1) Whether the
agreement of sale was void for uncertainty; and it was in-
sisted that there was no such language known in the law or
in business transactions as " bank-accepted note " or " bank-
accepted paper," and that therefore the minds of the parties
had not met, and that they had not understood the same
language in the same sense, and that there was no evidence
as to what kind of notes the banks of Eau Claire would ac-
cept. (2) That the agreement was within the statute of
frauds, for want of acceptance or receipt of the boat by the
purchasers, or part payment of the purchase price.

2. As the agreement was a verbal one, the sense in which
the words of contract were used, and what meaning, if
any, the parties attached to the expressions referred to, or
either of them, was a question of fact for the jury upon the

evidence. A contract would not be inoperative or void be-
cause they used language not technically accurate or exact.
It is enough if the parties understood the language used in
a practical sense, and attached to it a definite meaning, al-
though the court might not have been able to say what was
intended by the expressions used. It would have been proper
to have submitted this question to the jury, that they might
determine in what sense or with what meaning the expres-
sions, or either of them, were used. This is in accordance with
*Ganson v. Madigan,* 15 Wis. 144, 153, and the rule there
laid down has been acted upon in subsequent cases. *Bedard
v. Bonville,* 57 Wis. 270; *Lego v. Medley,* 79 Wis. 220, and
cases cited. This is the rule applicable to written instru-
ments the language of which is ambiguous or of uncertain
meaning, and no reason is perceived for denying its applica-
tion to verbal agreements. It is fair to presume from the
assent of the parties that they assigned some practical and
reasonably definite meaning to the words, and what mean-
ing it should be left to the jury to determine in view of the
entire transaction and surrounding circumstances throwing
light upon the question. This view is sustained in *Ward v.
Lattimer,* 2 Tex. 245, with respect to the words " cash notes "
and the payment of a certain sum of money "in deal."
*Reissner v. Oxley,* 80 Ind. 580. The rule is said to be that
the jury have the right to determine the existence of the
parol contract and its extent and limitations. They are to
find not only what language was used, but its purport and
meaning. 1 Thomp. Trials, § 1108; *Copeland v. Hall,* 29
Me. 94; *Herbert v. Ford,* 33 Me. 90, 93; *McKenzie v. Sykes,*
47 Mich. 294. And it seems to be well settled that the ques-
tion as to what the parties said and did in making the verbal
contract, and what they understood thereby, is single, and
cannot be separated so as to refer one part to the jury and
another to the court, but in its entirety the question is one

of fact.   In the present case we think it may be properly
said that the evidence tended to show that there was to be
given for the deferred payment of $1,000 paper of that
amount that would be bankable or good at the banks of
Eau Claire, so that the plaintiff might, if he wished, realize
the money at some time before it matured.

3. There was sufficient evidence of acceptance and receipt
of the steamboat by the purchasers to require that the case
be submitted to the jury, and upon which the jury might
have properly found that the sale was not within the stat-
ute of frauds.   The boat was in the river, below the bridge,
and there is evidence that the defendant *Garrison*, assuming
to act for his codefendants, arranged to take, and did have
their employee, Smith, take, the boat up above the bridge,
haul it out, and block it up in readiness for shipment on the
cars, for the agreed sum of $80, which was paid him by
*Holm*, and engaged him to look after the boat and see that
nothing was taken from it.   The defendant *Smith* admits
that the sale was made to him, and to him only, *Garrison*
acting as his agent.   Although the vendor's agent, Talbot,
was to assist in managing the lines, and give directions as to
the manner of moving the boat and taking it out, it was un-
derstood that he or his principal was not to be to any ex-
pense on account of it.   On the 7th of December afterwards,
*Garrison* and *Holm* expressed satisfaction with the boat and
the manner in which Tiny Smith, hired for the purpose by
*Garrison*, had done his work.   The question of acceptance and
receipt of the boat was for the jury.   *Smith v. Stoller*, 26
Wis. 671; *Amson v. Dreher*, 35 Wis. 615.   And there was
proper evidence for the consideration of the jury on this
subject.   *Amson v. Dreher, supra; Schmidt v. Thomas*, 75
Wis. 531.

4. There is no objection to a recovery on the ground that
the sale of the boat was by an assignee, and in part upon

credit. None but creditors could question the validity of the sale on that account. It follows from these views that the plaintiff was improperly nonsuited.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.