JAMES, Respondent, vs. CARSON, Appellant.

*November 25, 1896 — January 12, 1897.*

*Contracts, joint or several: Agreement to pay attorney for services rendered for another: Court and jury: Evidence: Special verdict: Release: Waiver.*

1. Where the terms of an oral contract are to be gathered from conduct and conversations, or where they are in dispute or ambiguous or vague, the question as to what the understanding or agreement in fact was is for the jury; but where an oral contract is detailed by the plaintiff, and no other testimony is given concerning it, and it is clear and unambiguous in its terms, it is the duty of the court to construe it.

2. In an action by an attorney to recover for services which he claimed to have performed in the defense of one R. on a charge of murder under an oral contract with defendant, plaintiff's testimony (stated in the opinion) is *held* to show merely an agreement that defendant and one B. would pay the bills for the defense jointly.

3. Where in such a case the plaintiff's testimony shows an express contract by defendant to pay for plaintiff's services jointly with B., evidence of subsequent acts of the defendant consistent with either a joint or a several hiring, which, in the absence of such express contract, would require the submission to the jury of the question what, if any, contract the defendant had made, is not of itself sufficient to take to the jury the question whether the contract made by defendant was joint or several.

4. The question whether the payment to plaintiff by B.'s executors of $1,500, in consideration of which plaintiff withdrew a claim which he had filed against the estate, amounted to a release of the estate should have been submitted to the jury for special verdict upon request, since, if the transaction was a release, it operated under sec. 4204, R. S., as a discharge of one half of plaintiff's claim.

5. The plaintiff having tried the entire case upon the theory of a separate contract with defendant and the latter having denied that there was any contract, evidence of defendant's admissions that there was a joint contract was inadmissible; and the failure of defendant to object to plaintiff's testimony, which showed a joint contract as matter of law, did not constitute a waiver of objection to such admissions.

6. An agreement with an attorney to pay for services to be rendered in the defense of a third person, made before any substantial work

James vs. Carson.

had been done on the case, is not an engagement to answer for the debt of another.

7. Evidence that defendant sent letters containing and gave oral, directions similar to those contained in a lost telegram purporting to have come from him, is *held* sufficient proof that he sent the telegram to render admissible oral evidence of its contents, notwithstanding his statement that he did not remember sending it.

APPEAL from a judgment of the circuit court for Eau Claire county: R. G. SIEBECKER, Judge. *Reversed.*

This is an action to recover the reasonable value of plaintiff's services as an attorney in the defense of one Elizabeth Russell, charged with murder. The complaint alleged that the defendant, being interested to secure the acquittal of the said Elizabeth Russell, retained and employed the plaintiff to defend her on said charge, and that he did defend her, and that his services therefor were worth $7,500, of which only $1,500 had been paid.

The answer admitted that the plaintiff defended Mrs. Russell, and denied all other allegations of the complaint. The answer further alleged: (1) That *James* had received $6,150 in full payment for all services and disbursements, which sum had been paid by the Valley Lumber Company at the request of and as agent for Thomas Russell, the husband of the accused; (2) that Mrs. Russell had paid the plaintiff the full amount of his services and expenses; (3) that the plaintiff had charged all of said services to one George A. Buffington, since deceased, and had presented a bill for the whole amount thereof against his estate, and thereafter compromised and settled the entire claim for the sum of $1,500, which became a full satisfaction and discharge of the claim set forth in the complaint.

Upon the trial it appeared that the defendant, on and prior to the 8th of December, 1891, was, and for some time previously had been, the president of the Valley Lumber Company, a corporation at Eau Claire, and that one George A. Buffington (since deceased) was vice president thereof,

and that one Thomas Russell had been for years employed by said company as foreman in the woods, and that the company owed Russell more than $1,000.  On the 8th day of December aforesaid, Mrs. Russell, wife of Thomas Russell, was arrested on the charge of murder.  She was afterwards tried, *Mr. James* acting as her counsel, and convicted, and the case was reported to this court.  *State v. Russell*, 83 Wis. 330.  In this court Mrs. Russell was represented by *Mr. James* and Mr. J. V. Quarles.  The questions were so answered in this court that upon the return of the record to the circuit court she was discharged.

The claim of the plaintiff is that he was retained by Mr. Buffington on or about December 4 to defend Mrs. Russell, and that about three days later he was also retained by *Mr. Carson*, the defendant, and that each retainer was separate.  *Mr. Carson* denies that he ever retained the plaintiff, either jointly with Buffington or separately, but claims that he acted simply as agent for Thomas Russell in disbursing and advancing money to *Mr. James* during his employment.  The preparation for the trial, and the trial itself, were both very expensive, and involved the retaining of experts and detectives.  Both *Carson* and Buffington took great interest in it, and consulted with *James* very frequently as to the conduct of the case.  The disbursements made by *James* amounted to $5,604.75, and he received from *Mr. Carson* to apply thereon, at various times from March 29, 1892, to October 16, 1893, the total sum of $6,150, all of which, except $500, was paid to him by checks of the Valley Lumber Company, signed by *Carson* as president.  The $500 was deposited in the bank by *Carson* to *James'* credit, and was the proceeds of a note of the Valley Lumber Company, discounted at the bank for that purpose.  Mr. Buffington died before the commencement of this action, and administration of his estate was begun in the county court of Eau Claire county.  *James* filed a claim against the estate

James vs. Carson.

for his retainer and services in the *Russell Case*, placed at
$5,000, and for disbursements, placed at $6,560, making a
total of $11,560, upon which he credited the $6,150 received
on the Valley Lumber Company checks, leaving a balance
alleged to be due of $5,410. There was negotiation between
the executors and *James* as to settlement of this claim. Fi-
nally, the executors paid him $1,500, and he, with leave of
the court, withdrew his claim, but gave no receipt, and
stated at the time that he intended to enforce the whole bal-
ance of the claim against *Carson.*

A special verdict was called for and rendered as follows:
" Question 1. Who first retained and employed *V. W. James*
to defend Elizabeth Russell of the charge of murder? An-
swer. George A. Buffington. Question 2. When was *V. W.
James* so first retained and employed? Answer. Decem-
ber 4, 1891. Question 3. Did the defendant, *Mr. Carson,*
ever retain or employ *V. W. James* to defend Mrs. Russell
of said charge of murder? Answer. Yes. Question 4. If
you answer 'Yes' to question 3, then state when *Mr. Car-
son* so retained or employed *Mr. James.* Answer. Decem-
ber 7, 1891. Question 5. If you answer 'Yes' to question
3, then was such retainer and employment of *Mr. James* by
*Mr. Carson* alone, or was it made by *Mr. Carson* and George
A. Buffington jointly? Answer. Severally. The Court:
Mr. Foreman, I want to ask you, in reference to the answer to
question 5 which I last read, did the jury find and mean by
this answer that *Mr. Carson* employed him separately and
alone? Foreman Polley: As the jury understood it, at those
two distinct times each one of those gentlemen separately
and alone employed *Mr. James.* The Court: Then you
meant to say by that answer that *Mr. Carson* employed him
alone? Mr. Polley: We did. Question 6. What has been
paid *V. W. James* on account of reasonable and necessary
disbursements incurred and paid by him in said matter?
Answer. $5,604.98. Question 7. What amount, in all, has

been paid $V. W.$ James on account of said matter of the defense of Elizabeth Russell? The court answered it, $7,650. Question 8. What were the services of $V. W.$ James in defending Elizabeth Russell, as he did, of said charge reasonably worth? Answer. $6,000. And we find the sum of $4,261.13 due said $V. W.$ James as principal, and interest to date."

Before submission of the case to the jury the defendant moved the court to direct a verdict for the defendant, and excepted to the ruling. After verdict, defendant moved to strike out the answer to the eighth question as unauthorized by the evidence; also to strike out the answer to the fifth question for the same reason; also to set aside the verdict, and for a new trial, because the evidence was insufficient to sustain the verdict; and for errors in reception and rejection of evidence, in submitting and refusing to submit questions, and for errors in the charge. All the motions were overruled, and exceptions taken, and judgment was entered for the plaintiff on the verdict, from which the defendant appealed.

*H. H. Hayden*, for the appellant.

For the respondent there was a brief by *Olin & Butler*, and oral argument by *J. M. Olin.*

WINSLOW, J. The most important contention made by the defendant upon this appeal is that there is no evidence in the case tending to show that he (*Carson*) severally employed *Mr. James* to defend Mrs. Russell, and that at most the evidence only tends to show a joint employment by *Carson* and Buffington. A careful review of all the evidence convinces us that this contention is well founded and must prevail.

Where the terms of an oral contract are to be gathered from conduct and conversations, or where they are in dispute, or are ambiguous or vague, the question as to what

the understanding or agreement in fact was is a question for the jury. *Becker v. Holm*, 89 Wis. 86. But where an oral contract is detailed by the plaintiff, and no other testimony is given concerning it, and it is clear and unambiguous in terms, it is the duty of the court to construe it.

That is the case before us now. *Mr. James* gave his version of the contract of hiring in no uncertain terms, and it established, if believed, a joint contract on the part of *Carson* and Buffington on one side and *Mr. James* on the other. This oral contract is related by the plaintiff several times during his examination as a witness, and in substantially the same terms. Upon direct examination he relates it as follows: "*Mr. Carson* stated to me that the only reason he and Mr. Buffington had for taking the interest that they proposed to in the Russell case was, as outlined by Mr. Buffington, as stated by Mr. Buffington. That Mr. Russell had been an old and faithful employee,— reiterated the substance of what Mr. Buffington had said. In that conversation I explained to *Mr. Carson* what would have to be done in order to prepare the defense, as I had done to Mr. Buffington. I also said to him what Mr. Buffington had said about the payment of the expenses and bills. I told him that Mr. Buffington said that he and *Mr. Carson* would pay the bills, and he said *they* would do so, and gave the reasons why they would do so, as I have stated. I agreed with *Mr. Carson* to proceed with the preparation of the defense of the case according to the best of my ability." Upon cross-examination he states it as follows: "I cannot state everything that I said to *Mr. Carson* in that interview except in substance. I said it might be necessary to interview various parties who might have some knowledge on the subject, or supposed to have some, and I referred to the labor that would be involved, and told him that it involved the making of a careful investigation of the facts; that it would be laborious, and consume time; that Buffington had re-

quested me to take charge of the defense; that he had said
that he wanted everything done that was necessary; that
he wanted a complete defense made for her; he didn't be-
lieve she was guilty, and he wanted no stone unturned, and
he wanted me to take hold of it and do everything in con-
nection with it; that I had said to Buffington that the course
which he marked out, and which seemed necessary, would
involve large expense; that I had gone over that with Mr.
Buffington, and that Mr. Buffington had said that he and
*Mr. Carson* would defend her,— proposed to defend her;
that the bills should be brought to them. *Mr. Carson* said
that Tom Russell had worked for them for a long time, and
had been faithful; that they had made money out of him,
and that they proposed to stand by her,— proposed to stand
by his wife,— stand by Mrs. Russell; he repeated that; said
it more than once; that was their reason for it."

It seems to us entirely plain that this means but one
thing, namely, that *Carson* ratified Buffington's promise, and
thereby agreed that he and Buffington would pay the bills
for the defense jointly.   There is no room for construing it
into a promise by *Carson* to become individually liable.

But it is said that the subsequent conduct of *Carson*, his
great interest and activity in the defense, his frequent con-
sultations with *James* about the case, his directions as to the
employment and retention of experts and detectives, may by
themselves alone be sufficient evidence from which to find
that a separate contract had been made by him.   Doubtless,
if there had been no evidence showing an original contract
in definite terms, all this evidence should go to the jury, to
decide what, if any, contract *Carson* had made.   But when
we have the original contract of hiring in clear and express
terms, these subsequent acts lose all their force as tending
to prove separate liability.   They are just as consistent with
a joint promise by *Carson* and Buffington together as they
are with a separate promise by *Carson* alone.   One witness,

James vs. Carson.

it is true, says that he heard *Mr. Carson* say on the street that " he had employed *James* to defend," but this statement is entirely consistent with a joint hiring by *Carson* and Buffington.   We shall not attempt to detail the testimony on the point, but will simply state the conclusion that the testimony of *Mr. James* clearly shows a joint contract, if it shows any contract, and that all the subsequent acts and conversations shown were consistent with a joint hiring, and hence furnish no ground on which to build a contract of separate hiring.

The contract (if there was any contract) being purely a joint contract with Buffington and *Carson*, and there being no evidence to show a several contract on the part of *Carson* alone, the submission of the question to the jury was erroneous, and the answer to it should have been stricken out.   It follows also that, if the transaction between *James* and the executors of Buffington's estate by which *James*, in consideration of $1,500 paid him, withdrew his claim against the estate, amounted to a release of Buffington's estate, then such release operated as a discharge of one half of the claim, under sec. 4204, R. S., and in that event the plaintiff could not recover the entire balance of the claim against *Carson* alone, but only *Carson's* equitable portion thereof as between him and Buffington.   The questions which the defendant proposed for the special verdict, submitting to the jury the question whether this transaction was in fact a release of the Buffington estate, were therefore proper, and should have been submitted in substance at least.

Upon the trial two expert witnesses were called, who had some conversation with Mr. Buffington, after the prosecution had commenced, with reference to their being employed as experts in the case.   They were allowed to testify against objection that Mr. Buffington told them, in the absence of *Carson*, that he and *Carson* had undertaken the defense, and had employed *James*.   The admission of this testimony is. alleged as error, and we think it was error.   The complaint

distinctly alleged a separate contract by *Carson*. The answer denied any contract. This was the issue when the case began, and no amendments have been made to the pleadings to change that issue. The plaintiff introduced evidence which he claimed tended to prove a separate contract. He claimed a separate contract in the court below all through the trial. The jury found it. The judgment which he obtained is founded upon such a contract, and can be sustained upon no other, and he claims the same thing in his brief in this court. Now, it is said that, because the defendant did not object to the evidence which we now hold showed only a joint contract, therefore he is precluded from objecting to evidence of Buffington's admissions. It is argued that he tried the case on the theory of a joint contract, and cannot now abandon that theory. This is a misconception of the defendant's position and rights. He has denied from the beginning, both in his pleadings and in his evidence, that there was any contract, joint or several, and has simply claimed that, if the plaintiff's evidence is to be believed, it proves only a joint contract. That he has a right to do without prejudicing his own defense. It seems to us that the plaintiff's position is the inconsistent one. He starts out with a claim of a separate contract, insists that his evidence shows such a contract, obtains a verdict establishing it, and a judgment which can only be sustained on that basis. Now, how can he be heard to say on one point of the trial that he will put in evidence which can only be received on the ground that he has shown a joint contract? Against objection properly taken we do not think, upon principle, that he can so shift his position. It is too much like blowing hot and cold at the same time. It is not a case of the trial of an issue outside of the pleadings without objection, but a case of a shifting of ground during the trial without amendment of the pleadings, against objection properly taken at the time.

It is strenuously urged that the evidence shows that *Car-*

*son's* contract, if he made any, was an engagement to answer for the debt of another person, namely, the debt of Mrs. Russell, or of Mrs. Russell and Mr. Buffington, and hence void, because not in writing expressing the consideration. This contention we do not regard well taken. The evidence shows that the contract, if made at all, was an original joint contract by *Carson* and Buffington together, made before any substantial work had been done by *James*, and was not collateral to any previous contract.

It is also objected that the contents of a lost telegram, alleged to have been sent by *Carson* to *James*, was allowed to be proven orally without proof that it was sent by *Mr. Carson* or was in his handwriting. It appears from the case that the contents of the alleged telegram was proven on the examination of the plaintiff without objection. It is not necessary, however, to sustain the ruling on this ground. There was evidence in the case showing the sending of letters, proved to have been signed by *Carson*, to *Mr. James*, all containing similar directions or advice concerning the conduct of the trial; and we think this evidence, in connection with the evidence showing similar oral directions by *Carson*, was sufficient to justify a finding that *Mr. Carson* in fact sent such a telegram, notwithstanding his statement that he does not remember sending it. If there was such proof, then oral evidence of its contents as received was admissible after the proper proof had been made showing its loss. *Flint v. Kennedy*, 33 Fed. Rep. 820; *Saveland v. Green*, 40 Wis. 431.

We have examined the remaining points made by the defendant, but do not consider it necessary to go over them in detail, but shall content ourselves with saying that we have found no other prejudicial errors.

*By the Court.*— Judgment reversed, and action remanded for a new trial.